## RODRIQUEZ v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 5465. Decided December 12, 1934. (38 P. [2d] 748.)
Rehearing Denied April 9, 1935.

For opinion denying petition for rehearing, see 86 U. 273; 43 P. (2d) 189.

*D. H. Oliver,* of Salt Lake City, for plaintiff.

*Joseph Chez,* Attorney General, and *Grover A. Giles,* Deputy Attorney General, for defendants.

STRAUP, Chief Justice.

This is a review of proceedings of the Industrial Commission whereby the applicant, Rodriquez, an employee of the United States Smelting, Refining & Mining Company, was denied compensation under our Workmen's Compensa-

tion Act. But one question is presented, that of the statute of limitations. The commission held the cause barred because the application was not filed in time, and on that ground, and that ground alone, dismissed the application. The applicant complains of the ruling.

Our statute, R. S. Utah 1933, 42-1-92, provides that,

"If no notice of the accident and injury is given to the employer within one year from the date of the accident, the right to compensation shall be wholly barred."

Such a notice was timely given. The Workmen's Compensation Act does not itself provide within what time an action or application for compensation must be commenced or filed. But this court several times held that the general statute, R. S. Utah 1933, 104-2-26, which provides that an action for liability created by statute must be commenced within one year, applies to the filing of an application or the commencement of an action for compensation under our Workmen's Compensation Act.

The matter is presented by the applicant in rather a narrow compass, based on the proposition: When did the right or cause to claim compensation arise or occur, whether within one year from the date of the accident, or one year from the time a compensable disability or injury arose shown to be attributable to the accident? If the former, the applicant admits he is out; if the latter, he claims he is in.

The applicant on May 3, 1931, in the course of his employment while timbering in the company's mine at Bingham, admittedly met with an accident from a block of wood falling from the roof of underground workings, either striking his hand and wrist, or the handle of the axe in his hand stretching out his arm and pulling his hand down, causing a sprain of the hand and wrist. He, on the same day, reported the accident to the foreman of the company and showed him his hand. That day or a few days thereafter the foreman gave

him a card to see the company's physician and surgeon operating a hospital at Bingham. The applicant kept on working in the mine and did not visit the physician until May 17. The physician examined the hand and wrist and found a slight swelling indicative of a sprain. He took an X-ray of the hand and wrist which did not disclose any bone pathology. The physician on May 19, 1931, filed a report with the Industrial Commission in which, among other things, he stated that the applicant was driving a wedge with an axe and sprained his wrist and hand; that the trouble was not due to any pre-existing condition; that there was no probable duration of temporary total disability; that no permanent injury or deformity would result, and that hospital attention was not necessary. On May 22, 1931, the company likewise filed a report with the commission in which, among other things, it stated that the injury occurred "while driving a wedge with an axe, the handle caught on some timber, causing him to sprain right wrist"; that the extent of the injury was "sprained right wrist and hand"; that there was no "probable duration of disability"; and that the applicant "lost no time."

The physician treated the applicant's hand and wrist for about a month and a half, until the latter part of June. During that time the applicant continued in his employment in the mine, timbering and mining, and continued thereafter doing the same kind of work until March 26, 1932, receiving regular and full miner's wages therefor, except for a period of about a week in July, 1931, when he did not work on account of an injury to the knee for which he was fully compensated by the company, which injury had no relation whatever to the accident of May 3d.

On March 26, 1932, the applicant voluntarily quit work because of a serious condition of his hand and wrist which rendered him unable longer to continue in his work. During most of the time after the accident and while he continued in his work, he, as he testified, suffered more or less pain in

his wrist, that it kept getting worse, but, as he testified, he "sacrificed himself" to stay on the job. He further testified that he at no time sustained any injury to his hand or wrist after May 3, 1931. There is not anything to show that the applicant visited the physician from the latter part of June, 1931, until March 26, 1932. He at that time also showed his hand to the foreman and told him that he was unable longer to do any work. The physician again took an X-ray of the hand and wrist which then showed an absorption of the meta carpal bones and an infection of the ulna and radius. He testified that he then told the applicant that the condition was not compensable, that it had no relation to the injury of May 3, 1931, and that the condition apparently was due to an infection, probably to a tubercular condition; that the applicant visited him at various times thereafter and was told the necessity of treatment, that splints were put on his hand, but the applicant removed them saying they were not doing him any good; that, in April following, the physician explained to him that his hand and wrist were in such condition as to necessitate an amputation of the hand, and that, if it was not then amputated, the amputation would have to be made later higher up.

The applicant testified that the physician did not tell him in April, 1932, that he was not entitled to compensation, or that the condition of his hand was not due to the injury of May 3, 1931, but told him that between May 5 and 7, 1932 (a few days after one year from the date of the accident); that, when in April he asked the physician if he was not entitled to compensation, the physician told him he would have to see the company; that he saw the company on April 15 and was told that the doctor had not communicated anything to the company with respect to any compensation; that on April 25 he told the doctor what the company had said, and that the doctor then stated he was going to report the case to the company; and that between May 5 and 7, when the doctor told him he was not entitled to compensation, the doctor told him his case was rheumatism.

The applicant further testified that then he and the Mexican consul on May 10 called on the commission. The commission referred the matter to the company. On the same day the applicant and the Mexican consul visited the attorney of the company who later communicated with them denying liability. The applicant thereafter appealed to the commission for relief. He was told he was required to submit to an examination. He did so. Several examinations were made by different physicians, some merely reporting to the commission what was shown by the previous X-rays; others reported the result of their examination and also their readings of the X-rays. They disagreed as to whether the condition of the wrist and hand was attributable to an injury sustained at the time of the accident. But, since the case was not considered on merits, we need not go into that.

Finally a formal application was filed by the applicant for compensation December 6, 1932. On such application the case was set for hearing, and the company notified. Among other defenses, the statute of limitations was interposed. Upon that defense the commission, without considering the merits, dismissed the action. In that connection the commission also found that there was not anything in the conduct of the company to toll the running of the statute. It is not argued, nor in this review is it claimed by the applicant, that by any act or conduct of the company the statute was tolled, or that he by any such act or conduct was induced or misled or influenced in not earlier filing an application with the commission for compensation. The argument is that the accident on May 3, 1931, did not produce or cause a compensable injury until March 26, 1932, when the applicant quit work, and that his application for compensation was filed within one year from that time.

In the case of *Katsanos* v. *Industrial Commission*, 71 Utah 479, 267 P. 781, the question was presented as to whether the one year dated from the date of the accident or from the development of a compensable injury or disability attribut-

able to the accident. It was left undecided, the court stating it was unnecessary to decide it, because of the conclusion reached that the applicant sustained a compensable injury—a bad bruise on the hand from coal falling on it—at the time of the accident, and since the amputation and loss of the arm because of infected bones did not occur until more than a year thereafter, for which loss alone compensation was sought, and no application for any compensation filed within one year from the date of the accident, compensation for the loss of the arm was barred; that, if an application within the year from the date of the accident had been filed, the commission, under its continuing jurisdiction, could have given relief for any subsequent development of an injury or disability attributable to the accident, and in such case could have made an award for the loss of the arm.

In a later case, *Maryland Casualty Co.* v. *Industrial Commission*, 74 Utah 170, 278 P. 60, 61 (where timely notice was given of the accident), this court said that:

"The accident occurred October 12, 1926, and the claim was filed June 23, 1928. While the Workmen's Compensation Act prescribes no limit of time during which claims for compensation of injured employees, must be filed, it is settled that such claims must be prosecuted within one year, under the general provision (Comp. Laws Utah 1917, § 6468 [now R. S. 1933, 104-2-26]) that an action for a liability created by statute must be commenced in one year." Citing *Utah Consol. Min. Co.* v. *Industrial Commission*, 57 Utah 279, 194 P. 657, 16 A. L. R. 458; *Aetna Life Ins. Co.* v. *Industrial Commission*, 66 Utah 235, 241 P. 223. "But, on behalf of the employee, it is argued that the time limited by law for prosecuting her claim did not commence to run until her injury culminated in disability, which was on December 19, 1927, and that therefore her claim was filed within time."

The court on considering and reviewing numerous cases cited by the applicant, further said:

"Assuming a compliance with the requirement of notice to the employer, the theory advanced in behalf of this award would permit an employee to maintain a claim for compensation at any future time after an accident, however remote, if he was able to show that he first became disabled within one year next preceding the filing of

his claim. We cannot give assent to such an interpretation. * * * We conclude that the limitation of time within which a claim for compensation may be filed must be computed from the time of the industrial accident which is the essential ground and basis for the claim," and thereupon the award of compensation allowed by the Commission was annulled.

We think those cases, especially the latter, are decisive of the question in hand and require an affirmance of the order of the commission denying compensation on the ground that the action was barred by the statute of limitations. Though the physician of the company within a few days after the accident treated the applicant's hand for more than a month, yet, since the applicant until March 26, 1932, continued in his regular employment (though, as he testified, under some disadvantage) without loss of any time and receiving regular wages for his work, it is not clear just when, if at any time prior to March 26, there was any substantial compensable injury or disability. It, however, is clear that on March 26, when he quit work, he then had such an injury or disability and compensable, if traceable, as he claimed, to the accident and to the sprain or injury of the hand and wrist at that time. He then had about 38 days left within which to file an application within one year after the accident. If the company by any act, conduct, or representation did or said anything to mislead or induce the applicant not to file an application within the one year period, or otherwise did anything to toll the statute, the case might present a different aspect. But on this review no such contention or claim is made.

The order denying compensation is thus affirmed.

ELIAS HANSEN, FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.