## UTAH COPPER CO. v. DISTRICT COURT OF THIRD JUDICIAL DIST. IN AND FOR SALT LAKE COUNTY et al.

No. 5825.   Decided January 4, 1937.   (64 P. [2d] 241.)

*Dickson, Ellis, Parsons & McCrea,* of Salt Lake City, for plaintiff.

*Badger, Rich & Rich,* of Salt Lake City, for defendants.

EPHRAIM HANSON, Justice.

This is an original proceeding in this court instituted by the plaintiff Utah Copper Company, a corporation, engaged in mining and in operating a copper mine in Salt Lake county, Utah, against the District Court of the Third Judicial

District of the State of Utah, in and for the County of Salt Lake, and the respective judges thereof, and Stephen Hays Estate, Inc., a corporation of the state of Utah, for a writ of mandamus commanding the District Court and the judges thereof to grant the plaintiff leave to amend its complaint in an action of condemnation proceedings pending in the said District Court and to proceed with, try and determine the issues as so presented by the amended complaint, and to review and vacate an order made by the District Court striking from the amended complaint certain paragraphs thereof, and to enjoin and restrain the District Court from entering judgment of dismissal on merits as to a portion of plaintiff's cause of action in the condemnation proceeding with respect to tracts of lands C and D owned by defendant Stephen Hays Estate and referred to in plaintiff's original complaint and in its petition for the writ, which tracts, on a prior appeal of the cause, were by this court on remittitur directed and ordered to be dismissed on merits by the District Court.

As appears by the verified petition for the writ and the opinion of this court on the prior appeal, referred to in the petition (*Utah Copper Co.* v. *Stephen Hayes Estate, Inc.*, 83 Utah 545, 31 P. (2d) 624, 632), the plaintiff is engaged in carrying on and conducting mining operations by an open-cut method near the town of Bingham Canyon in Salt Lake county, in which operations it is necessary for plaintiff to remove large quantities of what is called overburden, consisting of earth, rock, and other material carrying a small percentage of copper, to enable the plaintiff to remove more valuable ores on its mining properties. A large amount or quantity of such overburden so removed is and for some years has been dumped and deposited on lands owned by plaintiff in what is called Dixon Gulch, extending down the mountain side with an average grade or slope of 26 per cent, which gulch at its lower extremity joins Bingham Canyon and where the gulch is considerably narrower than above, being shaped something like a funnel.

The defendant Stephen Hays Estate, Inc., is the owner in fee of a tract of land below and adjoining the lands of plaintiff, which lands of the estate extend across the gulch from side to side and beyond and downward to what is called Bingham Canyon. That is to say, the estate was and is the owner of the lands in which is embraced and included the entire gulch, except the upper portion thereof owned by plaintiff and upon which it, for a number of years, dumped and deposited large quantities of overburden containing a small percentage of copper. The upper portion of the lands of the estate embraced within the gulch and adjoining the lands of plaintiff is referred to in the proceeding as tract D, and the lower portion thereof as tract C. The ownership of the estate to the upper portion of tract D is subject to an easement for railroad purposes acquired by the Bingham & Garfield Railway Company from the predecessors in interest of the Hays Estate. In the construction of the railroad across the gulch, the railway company on its acquired right of way filled the gulch with earth, rock, and material, some of which is similar to that contained in the plaintiff's dump, a part of the fill extending on plaintiff's ground and part on grounds of the estate adjoining that of the plaintiff. Upon such fill, the railway company constructed and operated its railroad across the gulch by virtue of an easement for a right of way for railroad purposes acquired by it from the predecessors in interest of the Hays Estate. The railway company otherwise acquired no right, title, or interest in or to the lands of the estate or any part thereof, and the portion of the fill placed on ground of the estate became a part thereof and belonged to the estate. It was so held on the prior appeal and was so found by the trial court from which the appeal was taken.

For a number of years small quantities of copper in carbonate and sulphide form, saturated with waters from rain and snow falling upon the dump and seeping and percolating within it, became soluble in water and susceptible of being recovered by precipitating the same by the use of copper

precipitants. The waters thus impregnated with and carrying copper in solution from natural causes seeped and percolated from the dump, and seeped and percolated in and through the soil and earth of the adjoining lands of the Hays Estate embraced within the gulch and referred to as tract D and downward to the lower portion thereof on what in the proceedings is referred to as tract C, where the waters at the bottom of the gulch are collected by plaintiff and conveyed to its precipitating tanks.

In the case of *Utah Copper Co.* v. *Montana-Bingham Consol. Min. Co.*, 69 Utah 423, 255 P. 672, where waters from similar causes in this case, from rain and snow falling on a dump of plaintiff, became impregnated with and carried a small percentage of copper solutions, it was held by this court that so long as such waters remained in the dump they were the property of plaintiff, but when they from natural causes seeped and percolated from the dump in and through the soil and earth of lands of another, the waters, though carrying copper in solution, were lost to plaintiff and became the property of such other and could not be followed nor reclaimed by the plaintiff. Here, as in the Montana-Bingham Case, the waters in the dump of plaintiff, from rain and snow falling on the dump and becoming impregnated with and carrying copper solutions from natural causes, seeped and percolated from the dump into and through the soil and earth of the lands of the Hays Estate adjoining the lands of plaintiff upon which the dump existed.

So in view of the decision in the Montana-Bingham Case, plaintiff here, the Utah Copper Company, in May, 1928, commenced an action in the District Court of Salt Lake County against the defendant Stephen Hays Estate to condemn tracts of land D and C of the Hays Estate through the soil and earth of which the waters so impregnated with and carrying copper solutions seeped and percolated, and to collect such waters on tract C, and to condemn easements over several other tracts of land described as tracts A and B of the Hays Estate in the gulch, and by means of pipe lines to

convey and carry the waters into and from tract C to precipitating tanks of plaintiff, and tract G for a transmission line. The proceeding so instituted as to tracts C and D we think was but another way to circumvent the effect of the decision in the Montana-Bingham Case, and by the condemnation proceedings to accomplish indirectly what plaintiff could not accomplish directly, to wit, follow and reclaim the waters impregnated with and carrying the copper solutions seeping and percolating into and through the soil and earth of lands of the Hays Estate, or to condemn the gulch embracing the lands of the Hays Estate as a sort of conduit to to carry the waters from plaintiff's dump to the bottom of the gulch where they might be collected and received by plaintiff and conveyed to its precipitating tanks. There was no other purpose in instituting the condemnation proceeding. The lands sought to be condemned in no sense are or were beneficial to plaintiff for any other use or purpose, either public or private. On filing its complaint, plaintiff was given immediate possession of the lands so sought to be condemned and at once proceeded to collect and recover at the bottom of the gulch on tract C of the Hays Estate the waters so impregnated with copper solutions and seeping and percolating through the soil of tracts D and C and by means of pipe lines conveying such waters from tract C to precipitating tanks of plaintiff. The Hays Estate contested the right of plaintiff to condemn or to acquire any right, title, or interest in or to the waters after they had seeped and percolated from the dump into and through the soil of the lands of the Hays Estate so sought to be condemned, and alleged that the estate was the owner of and entitled to the possession of such waters.

The case was tried to the court below and, on the issues presented, findings were made and judgment rendered in favor of plaintiff and against the Hays Estate as prayed for by plaintiff, from which judgment the Hays Estate prosecuted an appeal to this court with the result that the judgment of the court below was reversed and, among other

things, by the remittitur from this court it was ordered and directed that the court below dismiss the action as to tracts D and C and to proceed to determine the damages to which the defendant Hays Estate was entitled by reason of the taking and severance of the other tracts sought to be condemned. In the course of the opinion (*Utah Copper Co.* v. *Stephen Hayes Estate,* supra, rendered and filed March 28, 1934) this court, among other things, said:

"Since the plaintiff has no legal right to take tracts C and D by these proceedings, the judgment will have to be reversed as to them. But the plaintiff may nevertheless desire to take the other tracts which are described in the complaint, and its right to do so is not seriously controverted by the defendant. The damages to which the defendant is entitled for the several tracts which plaintiff may desire to take have not been separately ascertained or determined, and cannot be determined upon this record. Because of this, the judgment will have to be reversed in its entirety and the cause remanded for a new trial, with directions to the lower court to dismiss the action as to tracts C and D and to proceed to determine the damages to which the defendant is entitled by reason of the taking and the severance of the several other tracts; the parties being given leave to amend their pleadings if they desire to do so, as they may be advised. The plaintiff should be required to pay the costs of the first trial and of the appeal. Such is the order."

By the remittitur in the cause sent down by this court to the court below, it is recited:

"This cause having been heretofore argued and submitted, and the court being sufficiently advised in the premises, it is now ordered, adjudged and decreed that the judgment of the District Court herein be, and the same is, reversed and the cause remanded for a new trial with directions to the lower court to dismiss the action as to tracts C and D and to proceed to determine the damages to which the defendant is entitled by reason of the taking and the severance of the several other tracts; the parties being given leave to amend their pleadings if they desire to do so, as they may be advised. The plaintiff is required to pay the costs of the first trial and of the appeal."

The matters and things there reviewed and considered by this court in reaching such result and the grounds and

reasons stated therefor are clearly disclosed by the opinion. As so disclosed, the case in the court below and on the appeal was presented on the theory that the waters in the dump by seepage and percolation through natural causes left the dump and seeped and percolated in and through the soil of the Hays Estate, but notwithstanding such fact, plaintiff nevertheless claimed the right by condemnation of the lands of the estate in and through which such waters seeped and percolated to regain and acquire full right, title and interest in and to such waters and to recapture and collect them at the bottom of the gulch on tract C, lands of the estate, and to convey them therefrom to its precipitating tanks. With respect thereto, this court on the appeal said:

"It is settled law in this state, and, so far as we know, it is the law everywhere, that the ownership of such waters is vested in the owner of the soil through or in which they seep and percolate. This is so because they are a part of the land itself." Citing numerous cases from this jurisdiction, including the case of *Utah Copper Co.* v. *Montana-Bingham Consol. Min. Co.*, supra.

In other portions of the opinion this court further stated that it was the contention of the defendant Hays Estate that plaintiff had:

"No right in law to take defendant's lands by these condemnation proceedings and thereby deprive the defendant of its right to capture the waters which seep and percolate through the same and to extract the copper therefrom; for the result of a judgment of condemnation in this case would simply be to take defendant's property and give it to plaintiff, which would be in direct violation of the principle of the law of eminent domain above stated. The argument is sound. We see no escape from the conclusion announced."

In the opinion it is further stated that so long as the waters remained in the dump they were the property of the plaintiff, but when it permitted them by natural causes to leave the dump by seeping, percolating, or flowing therefrom and to enter upon and seep and percolate in and through the soil of lands of another—here the lands of the

defendant Hays Estate—they thereupon became the property of such defendant, and while the landowner may prevent the escape of such waters from his land, if he can do so, yet he has no right to follow them into the lands of another and there capture, control, or reduce them to possession.

In the course of the opinion it is further stated that the doctrine urged by plaintiff that where a person by his own exertions increases an available supply of water in a stream, that is, adds water to a natural stream, which would not otherwise flow therein, he, as against other appropriators, has the right to take and use such water out of the stream to the extent of the increase, had no application to the case; that there was no stream in Dixon Gulch to which plaintiff had added any water; that all the waters in the gulch were from rain and snow falling upon the watershed of the gulch; that plaintiff had not "put one drop of water into the gulch," and "had not done anything whatever to reduce the waters to its possession or control while they were in the plaintiff's land, or to prevent their escape therefrom, but suffered and permitted them to escape from its land" by seepage and percolation in and through the soil of the lands of the Hays Estate.

It is further alleged in the petition for the writ that on or about January 7, 1935, and after the filing of the decision of this court in March, 1934, reversing the judgment of the court below, plaintiff instituted a new and independent action in the District Court to condemn an easement through a portion of the area embraced within the original tract D, to enable plaintiff to intercept upon its premises the copper solutions in the dump and to convey them to collecting facilities; that upon the filing of the complaint in such new action, plaintiff was granted an order and put in possession of such tract, and that in and since March, 1935, it intercepted and captured the solutions in the dump upon its own property, and ever since so continued to capture and divert them from its own premises, and claimed that, at the place

of interception, such waters so coursing in the gulch became public waters of a natural stream, and not percolating waters, and thus subject to the jurisdiction of the state engineer and were filed on in his office by plaintiff, which action upon issues joined is still pending in the District Court and undetermined. What pertinence such averments as to the bringing of an entirely new and independent action have to the proceedings of the cause tried in the District Court and appealed to this court and concerning which the amendments to the original complaint pertain and the rulings in the District Court relate, is not apparent. We thus need not further notice such averments.

It is further alleged in the petition for the writ that upon the filing of the remittitur of this court in the court below, wherein and whereby this court directed a dismissal of tracts C and D, plaintiff on May 8, 1935, filed, in the original cause of action and wherein the judgment of the court below was reversed, what is denominated an amended and a supplemental complaint consisting of 25 or more typewritten pages divided into 29 paragraphs, a copy of which amended and supplemental complaint is attached to plaintiff's petition for the writ of mandamus and made a part thereof. It is not practical in an opinion to attempt to set forth even an abridgment of the amended complaint. It purports to be a statement of an intended complete cause of action. Much of the original complaint is recited therein, especially the business of plaintiff, the operation of its mine, the description and location of the dump carrying a low grade of copper in carbonate and sulphide form and upon exposure to air and meteoric waters becoming soluble in solution seeping and percolating within the dump and capable of being precipitated by copper precipitants, the location and description of the gulch, the right of way over and the fill in the gulch by the Bingham & Garfield Railway Company acquired from the predecessors of the Hays Estate, the location and description in the gulch of the lands of the Hays Estate and the upper portion thereof adjoining the lands of plain-

tiff upon which the dump is located, and other allegations contained in the original complaint. But in such particular, the properties of the estate sought to be condemned in the amended complaint are not described as tracts D or C, or B, as in the original complaint, but as tracts I and H, and J as an additional tract. Tract I, however, as so described, includes a portion of tracts C and D, and tract H, connecting with tract I, as described, contains tract B and a portion of tract C, as described in the original complaint, and tract J as a tract to convey the waters to tract H, which, as described in the original complaint, constituted the same waters collected and recovered on tract C, as described in the original complaint, and conveyed to the precipitating tanks. All that is particularly made to appear by paragraphs 12 to 18, both inclusive, and by paragraph 25 of the so-called amended and supplemental complaint. By such amended complaint it is further alleged that though the low grade copper in the dump, because of its exposure and by the rain and snow falling upon it and seeping and percolating through the dump, became soluble in water, yet such waters so impregnated with copper solution did not—as was the theory on which the case on the original complaint was tried in the court below and presented to this court on appeal—leave the dump by seeping and percolating therefrom in and through the soil of the lands of the Hays Estate in the gulch, but left the dump in a stream or current and flowed into a natural stream of unappropriated waters in the gulch and appeared on the surface at the bottom of the gulch on what in the original complaint was described as tract C and in the amended complaint as tract H. And in such respect, it is further alleged in the amended complaint, and in the said paragraphs referred to, that from time immemorial at all seasons of the year and without cessation, a natural stream of water flowed down the gulch in a natural water course from springs near its head, which waters had not been appropriated or used by the Hays Estate nor by its predecessors, except that the Hays Estate desired to use

such waters to extract therefrom the copper in solution flowing from the plaintiff's dump; and, further, that plaintiff had acquired a right in and to such waters by filings in the office of the state engineer, and that the condemnation of the lands of the Hays Estate in the gulch and as in the amended complaint described as tracts I, H, and J, was necessary to enable plaintiff to use such waters for the purpose of collecting and conveying them to its precipitating tanks and extracting the copper in solution from such waters.

There are other allegations contained in the amended and supplemental complaint which also are set forth in the petition for the writ, and in harmony with and in pursuance of such allegations, it is further alleged that this court, on the former appeal in the cause wherein the court below was directed to dismiss the action as to tracts D and C, misconceived the facts, assumed or itself made findings contrary to the findings of the court below adopted or approved by this court, erred in stating that there was no natural stream of water coursing or flowing in the gulch and that the gulch was dry except in seasons when rain and snow fell upon the watershed of the gulch, erred in holding that the right to the use of water flowing in a stream to the extent as augmented by other waters coursed therein by another did not apply, erred in holding that the waters which left the dump from natural causes seeped and percolated therefrom in and through the soil and lands of the Hays Estate sought to be condemned, and that this court, without the issues and beyond its jurisdiction, adjudged that the waters so coursing in and through the soil and lands of the Hays Estate became and were the property of the estate, and that the ownership of or right of possession to such waters was not involved in the matters presented on the appeal.

It is further alleged in the petition for the writ that the Hays Estate demurred to the amended and supplemental complaint; filed a motion to strike the said paragraphs 12 to 18, inclusive, and paragraph 25 of said amended and sup-

plemental complaint on the ground, among other things, that such amendments were not in accordance with the remittitur from this court permitting amendments to the pleadings; that by such paragraphs it was attempted to set up and allege a new and different cause of action with respect to substantially the same tracts of land described in the original complaint and with respect to which this court by its former opinion and remittitur had directed the action to be dismissed; that the estate also filed a separate motion in the District Court, in obedience to the remittitur from this court, to dismiss the action on merits as to tracts C and D, and each of them, of the Hays Estate, and as described in the original complaint and sought to be condemned by plaintiff; that the District Court overruled the demurrer, ordered that the motion to strike be granted, and the action as to the lands covered and described in tracts C and D be dismissed on merits; that while minute entries had been made as to the rulings on such motions to strike and dismissal, no formal judgment with respect thereto had as yet been entered, because of the request of plaintiff not to make such formal entries, to enable plaintiff to apply to this court for a writ of mandamus; and that, as alleged, unless an alternative writ of mandate be granted by this court such formal entries of such orders and judgment will be made.

There are other allegations contained in the petition for the writ. The petition also is voluminous, itself containing (exclusive of the amended complaint attached thereto) 23 typewritten pages divided into 22 paragraphs. We find it unnecessary to further refer to them because the allegations to which we have referred in abridgment constitute the principal allegations and grounds upon which the application for the writ is predicated.

Upon the filing of such petition, an alternative writ of mandamus was issued ex parte by this court directing the District Court of Salt Lake County to entertain the amended and supplemental complaint, including the paragraphs ordered stricken, and upon issues joined to hear, try, and de-

termine all of the matters therein presented, and to desist dismissing the action as to tracts D and C, or show cause why the court should not do so. In response to the alternative writ, the defendants, and each of them, appeared and demurred to the petition for the writ for want of sufficient facts to entitle the plaintiff to the writ, and, further, separately moved the court to recall and quash the writ on the ground, among others, that the amended and supplemental complaint is not in accordance with but contrary to the remittitur of this court on the appeal and filed in the court below; that under the remittitur no amendment to the original complaint as to tracts D and C therein described was permissible nor was it permissible to add other tracts; that as to tracts C and D it was clear that this court by its remittitur directed the court below to dismiss the action on merits; that the matters and things presented by the amended and supplemental complaint for further litigation as to condemnation of tracts C and D, or any part thereof, were determined and adjudicated on the former appeal and not subject to further litigation; that the duty of the District Court under the remittitur to dismiss the action as to such tracts and as described in the original complaint, was clear and mandatory; that the matters and things set forth in the amended and supplemental complaint and ordered stricken constituted a departure from the original complaint and a new and a different cause of action and a different theory from that declared by and tried on the original complaint.

At the same time, the defendants, not waiving their demurrer and motion to quash, also filed an answer wherein such matters are more particularly set forth and other material allegations of the petition for the writ are denied.

As we view the principal question or questions presented by the petition for the writ, we are of the opinion that they may be disposed of on the demurrer and motion to quash without considering or determining the controverted allegations of the petition by the answer. At the threshold there

is involved the necessary question as to whether, on the face of the petition and of the recitals therein contained as to the proceedings had in the District Court, the matters and things set forth therein for decision may, on an application for a writ of mandamus, be reviewed, considered, or decided. The rule is well settled, and this court is committed to the doctrine, that mandamus will not lie unless the duty it is sought to enforce is a legal duty, clear and free from doubt, and the right of the party seeking redress through such remedy is equally clear, and that an application for such a writ may not be converted into a writ of review or to review matters involving judgment and discretion of the court below. In the case of *Joseph Nelson Plumbing & Heating Supply Corporation* v. *McCrea, Judge,* 64 Utah 484, 231 P. 823, 825, this court said:

"Nor can we, in these proceedings [an application for prohibition and mandamus], determine whether the court's reasons [in ruling or acting as the court did] were sufficient or not. If they were not sufficient they constitute mere error of judgment, and it has become elementary that mere errors of judgment cannot be reviewed in proceedings of this nature. In any view that may be taken, therefore, the district court acted within its powers and jurisdiction, and therefore prohibition is not the proper remedy. The same is true regarding mandamus. If the district court had the right to exercise any discretion in the matter of setting aside the sale, mandamus is not the proper demedy. If, therefore, the court acted for cause, and the record before us is conclusive that it did, it must necessarily have exercised its judgment and discretion in determining whether there was adequate cause upon which to base its action. In determining that matter the court may have erred, but mere errors of judgment, however gross, cannot be corrected in a mandamus proceeding. That can be done only on an appeal from a final judgment in the case."

Similar views are expressed by this court in the case of *State* v. *Morehouse,* 38 Utah 234, 112 P. 169, where this court approvingly quoted from High's Extraordinary Legal Remedies (3d Ed.) § 32; Merrill on Mandamus, § 41; and Wood on Mandamus, p. 51. To that effect, too, is the case of *Richards* v. *Dist. Court of Weber County,* 71 Utah 473, 267

P. 779.   In the case of *Board of Home Missions, etc.,* v. *Maughan, Judge,* 35 Utah 516, 101 P. 581, 584, this court further stated:

"Nor does it affect the jurisdiction that the error or irregularity is palpable or gross. It is nevertheless merely error and not usurpation of power. It may sometimes seem like usurpation when a court permits or authorizes some act in the course of a proceeding which is clearly and manifestly erroneous, but all such acts amount only to an erroneous exercise of jurisdiction, and not to an excess of it, as the term 'excess' is understood and applied by both courts and lawyers."

In 22 R. C. L. 24 it is stated that even an erroneous decision of a jurisdictional question is not ground for issuing a writ of prohibition (and the same rule applies to the issuing of a writ of mandamus), if the court has jurisdiction of the general class of cases to which the particular case belongs, since there is an adequate remedy by appeal. It frequently has been held that rulings on demurrers, as well as motions to strike, permitting or refusing amendments to pleadings, will not be reviewed on extraordinary proceedings. *Harries* v. *McCrea, Judge,* 62 Utah 348, 219 P. 533; *Sanford* v. *District Court,* 8 Ariz. 256, 71 P. 906; *State* v. *Medler, Judge,* 17 N. M. 644, 131 P. 976, Ann. Cas. 1915B, 1141. Many other cases might be cited to the same effect. A very able and comprehensive collection and discussion of the cases from this and numerous other jurisdictions on the subject of the application of the writ of prohibition to jurisdictional questions is contained in the opinion of Mr. Justice Wolfe in the recent case of *Atwood* v. *Cox,* 88 Utah 437, 55 P. (2d) 377.

The reasons for such holdings are that where a court has jurisdiction of the subject-matter and of the parties, rulings made on demurrers, permitting or refusing amendments to pleadings, motions to strike, etc., involve and invoke jurisdiction not only requiring but demanding judgment of the court with respect thereto, and no matter how erroneous the rulings may be in such particular, they may not be reviewed

on any of the extraordinary remedies. This court is firmly committed to that doctrine. And where a court has jurisdiction of the subject-matter and of the parties, it indeed would be strange to adopt a different doctrine, that whenever a ruling is made on a demurrer or with respect to amendments to pleadings or motions to strike, resort may be had to one or more of the extraordinary remedies to review or annul such rulings. Here the District Court admittedly had jurisdiction of the subject-matter and of the parties. There can be no doubt as to that.

But it is averred and argued by plaintiff that this court by its opinion and by the remittitur gave the parties leave to amend pleadings, as plaintiff contends, in all particulars and as they might be advised. Neither the language of the remittitur nor the opinion of this court in such respect, hereinbefore in haec verba set forth, is susceptible of such a construction. It does not in terms nor by implication give leave to the parties to amend pleadings with respect to the condemnation of tracts C and D as in the original complaint described, or any part thereof. As to such tracts, the plain and mandatory direction, both by the remittitur and the opinion, is to dismiss the action. It is paradoxical to say that this court by its remittitur directed the court below to dismiss the action as to tracts C and D, and at the same time urge, as does plaintiff, that this court gave leave to amend the pleadings with respect to the portion of the action which was so directed to be dismissed on merits, and, too, directed to be dismissed because of the adjudication in the cause on the appeal, that plaintiff had lost and was not entitled to any right, title, or interest in or to any of the waters from the dump which seeped and percolated in or through the soil of tracts C and D, and not entitled to condemn such tracts to recover or reclaim such lost waters. In view of that, it is self-contradictory to assert that this court, either by its opinion or by the remittitur, gave plaintiff leave to amend its pleadings in any particular with respect to further proceedings as to condemnation of either tract

D or C, or any part thereof. The leave granted to the parties to amend, if so advised, related entirely to further proceedings in determining damages to which the Hays Estate might be entitled by reason of the taking and severance of tracts of land described in the complaint other than tracts D or C, and, at most, as to tracts D and C, to determine merely the damages to the Hays Estate resulting from plaintiff's occupancy of such tracts and taking and converting the waters seeping and percolating therein adjudged to be the property of the estate, but in nowise to further litigate the condemnation of such tracts, or any part thereof, nor as to the title or ownership of the waters in tracts C and D. As to such tracts, the action as to any further proceedings to condemn them, was directed to be dismissed. Neither the opinion or the remittitur is open to any other construction.

It thus became the plain duty of the District Court, on motion of the Hays Estate, to dismiss the action on merits as to the lands embraced within tracts D and C and as directed by the remittitur and as the court below had ordered to be done. The District Court had no discretion to do otherwise. Since that is true, it follows that plaintiff could not by filing an amended or supplemental complaint, circumvent or forestall the effect of the remittitur to so dismiss the action as to tracts C and D.

Further, it is familiar doctrine that every pleader is required to state the cause of action or defense upon which he relies; that a party in the trial of a cause adopting a theory of the case is generally bound by it; that a case must stand or fall upon the theory on which the complaint is based, and that a party cannot take or adopt one position in the trial court and thereafter urge a different one on appeal; and that whatever liberality may be indulged in permitting amendments to pleadings, the cause of action as alleged in the original complaint or as adopted on the trial of the cause on merits, may not be departed from nor a new or different cause of action substituted by amendments. Such doctrine is so elementary and so often declared by this court as not

to require the citation of authorities. On a reading of the opinion of this court on the appeal referred to, *Utah Copper Co.* v. *Stephen Hayes Estate, Inc.,* supra, it is clear that the case on the original complaint was tried on merits in the court below and was presented to this court for review on the theory that the waters of the dump left the dump by seepage and percolation and seeped and percolated in and through the soil of tracts D and C owned by the Hays Estate, and that plaintiff sought to condemn such tracts embraced within the gulch to entitle it to recapture and reclaim such waters at the bottom of the gulch so seeping and percolating through the soil of tracts C and D; that is, by condemning and acquiring the use and possession of tracts D and C to bedrock and from one side of the gulch to the other, plaintiff thereby, as contended by it, acquired right, title, and interest in and to such waters from the dump seeping and percolating in and through tracts D and C, or to condemn such tracts within the gulch to bedrock as a sort of conduit to carry and convey the waters from the dump by seepage and percolation through tracts D and C to the bottom of the gulch on tract C. It was on such theory that the case was tried in the court below and presented to this court on the appeal. Both the prevailing and dissenting opinions of this court so show. That is what the majority court held plaintiff could not do—condemn the lands themselves to acquire or reclaim the waters seeping and percolating therein, or to condemn such lands as a mere conduit to convey and carry such waters by seepage and percolation to the bottom of the gulch.

On the filing of the remittitur, plaintiff by its amended and supplemental complaint, abandoned the theory that the waters seeped or percolated from the dump, or seeped or percolated down the gulch through the soil of tracts D and C, and now, in effect, alleges by the amended and supplemental complaint an entirely different theory—one that the waters from the dump flowed therefrom in a current or stream of water and flowed and emptied into a natural

stream of public and unappropriated water coursing immemorially down the gulch through tracts D and C, year in and year out, and at all times without cessation, and by filings made by plaintiff in the state engineer's office to appropriate such waters to precipitate the copper solutions therefrom, plaintiff became and was the rightful owner of such water, notwithstanding the adjudication on the appeal that the Hays Estate is the owner of such waters from the dump seeping and percolating through the soil of tracts C and D. It is apparent that as to such tracts, plaintiff by such amendments changed and departed from the theory alleged in its original complaint, and upon which the case was tried on merits in the court below and presented to this court for review, and hence the amendments, in so far as they applied and related to tracts D and C, were not permissible.

In this connection, however, plaintiff avers in its petition for the writ of mandamus and argues that this court on the appeal misconceived the facts in so regarding the waters as percolating waters, erroneously stated and misconceived the facts that no water in a natural stream coursed or flowed down the gulch, and, without the issues, adjudged that the waters flowing from the dump and coursing down the gulch to and on tract C, as hereinbefore indicated, was the property of the Hays Estate; and, thus, plaintiff on the application for the writ demands that we re-examine and again review the record reviewed by us on the appeal, as shown by the abstracts and briefs of the cause remaining on file in the Supreme Court, as do abstracts and briefs in all cases on appeal, and correct and undo what in such respect was done by us on the prior appeal. What, on the prior appeal, we conceived or, if at all, misconceived as to the facts, or what we ruled or decided on such appeal, we prefer to take our own judgment and not what the plaintiff in such particular now avers or asserts. The responsibility on the appeal to correctly review the facts as presented by the record, and as to the rulings and orders made by us, rested, as it must,

upon this court. We, of course, are of the opinion that we correctly reviewed the record on that appeal and that the rulings and decision made were within the issues. Since the primary objective of the proceedings to condemn Tracts D and C from one side of the gulch to the other down to bedrock was to enable plaintiff to recapture and possess the waters from the dump which seeped and percolated in the soil and lands of tracts D and C, which waters plaintiff asserted and claimed to be the owner and entitled to the possession of, and which, on the contrary, the Hays Estate alleged and claimed to be the property of and owned by the estate, it seems untenable to now claim or assert that ownership and right of possession to such waters were not involved and that the adjudication made by this court that such waters were the property of the estate was without and beyond the jurisdiction of this court. On the contrary, such issue was directly involved and on the record and as disclosed by the opinion, presented for review and decision.

A petition for a rehearing was filed, and, if what is now averred and asserted wherein we misconceived the facts or adjudged anything not within the issues is true, such matters, whether they were or were not presented, then could have been presented to this court to further examine and consider the record and make such rulings in the premises as we might then be advised. The petition for rehearing was carefully gone over and considered, and as a result thereof our former views and rulings were adhered to and the rehearing denied. That must be the end as to all such questions. To do what plaintiff, several years thereafter, now urges to be done on a petition for a writ of mandamus, to further review and re-examine the record on the former appeal with a view to undoing or correcting what, if anything, as is urged, was misconceived or erroneously decided, is both novel and beyond the power of this court to grant, and is the making of a most extraordinary and unwarranted function or use of an extraordinary remedy, and may not be done without usurpation of power.

The question of compliance or noncompliance with the remittitur on the appeal sent down to the court below, of course, is before this court on the application for a writ of mandamus. The rule is well established and there does not seem to be anything to the contrary that when a case has been determined by a reviewing court and remanded to the trial court, the duty of the latter is to comply with the mandate of the former. The mandate is binding on the lower court and must be strictly followed and carried into effect according to its true intent and meaning as determined by the directions given by the reviewing court. When the trial court fails or refuses to obey or give effect to the mandate or remittitur, or misconstrues it or acts beyond its province in carrying it out, it becomes the province and duty of the appellate court to enforce compliance therewith, and it is generally recognized that such may be done on writ or order of mandamus. The lower court upon remand of a case from a higher court, must obey the mandate or remittitur and render judgment in conformity thereto and has no authority to enter any judgment not in conformity with the order. Whatever comes before and is decided and disposed of by the reviewing court is considered as finally settled, and the inferior court to which a mandate issues is bound by the decree as the law of the case and must carry it into execution according to the mandate, and after the reviewing court has determined the case before it and remanded it to the lower court, the latter is without power to modify, alter, amend, set aside, or in any manner disturb or depart from the judgment of the reviewing court; that the judgment of the higher court is not reviewable in any way by the court below and the lower court cannot vary or examine the decree of the higher court for any other purpose than execution, or give any other or further relief or review it even for apparent error upon any matter decided on appeal, or meddle with it further than to settle so much as has been remanded. 3 Am. Jur. Appeal and Error, 729, § 1233 et seq.; 18 R. C. L. 316, § 263, and the cases cited. Numerous

additional cases are also cited by defendant supporting the same views. The cases and authorities cited by plaintiff with respect to the duty, function and power of the lower court in complying with and obeying the remittitur and mandate of a reviewing court on appeal, do not make against the doctrine and principles stated by the texts and cases referred to. They, in effect, support the same views. In such respect, plaintiff does not contend for any doctrine to the contrary. What it more particularly contends for is that by the terms of the remittitur, plaintiff was entitled to amend the original complaint in the action as proposed, including the paragraphs ordered stricken by the lower court; that this court in reviewing and considering the case on appeal misconceived and misstated the facts as disclosed by the record on appeal; and, without the issues, decreed and adjudged that the Hays Estate was the owner of the waters seeping and percolating in tracts D and C and that plaintiff could not reclaim or repossess such waters by condemnation of the tracts themselves, and thus that the judgment so rendered by this court was void and ineffectual as "the law of the case" or as res judicata.

We have already indicated that the remittitur with respect to the dismissal of the action as to tracts C and D was clear and direct, and that it was the plain duty of the lower court on motion of defendant to dismiss such action on the merits as to such tracts; and that, for reasons heretofore stated, the portion of the amendments to the original complaint to further litigate the right to condemn tracts C and D was properly stricken, and, if not, whatever error, if any, was committed by the lower court in so striking a portion of the proposed amendments is not reviewable on mandamus proceeding. Equally is it untenable, on application for a writ of mandamus, to require this court to re-examine and further review the record on the appeal with the view, as is urged, of ascertaining and determining whether this court on the appeal did or did not misconceive or misstate the facts, or err in adjudicating that the waters

seeping and percolating in tracts C and D were the property of and belonged to the Hays Estate. And, as also indicated, that upon the case as presented and reviewed by this court, it is clear that plaintiff by the condemnation proceeding sought the right to possess and recapture the waters seeping and percolating in tracts C and D by condemning such tracts to bedrock from one side of the gulch to the other, to which waters the Hays Estate alleged ownership and right of possession, and with respect thereto this court held that when plaintiff permitted the waters from the dump to seep and percolate therefrom and seep and percolate in and through the soil of the adjoining tracts C and D owned by the Hays Estate, plaintiff lost whatever right, title, or interest it had in and to such waters so seeping and percolating in and through the lands of the estate, and they became the property of the estate. It thus is clear that the ownership and right of possession of such waters were directly involved and presented for adjudication.

Hence, the cited cases by plaintiff, *In re Evans et al.*, 42 Utah 282, 130 P. 217, and other cases to the same import, that pleadings are the juridical means of investing the court with jurisdiction of subject-matter to adjudicate it, that a judgment not supported by pleadings must fall, etc., have no application here. Nor do the cited cases and texts by plaintiff, that the rule of "the law of the case" is not an inflexible one on a second appeal, have any application. The matter now involved is not on a second appeal. It is time enough to consider such matters when and if there be a second appeal. The general rule, of course, is that what is settled and decided on an appeal by a reviewing court is final and settled, and whatever remittitur or mandate is sent down to the court below must be followed and obeyed, and the lower court may not even for apparent error, if any, in the filed opinion of a reviewing court disregard the plain terms of the mandate; nor may this court on application for a writ of mandamus re-examine or review the record on a former appeal for the purpose of ascertaining or determining whether error, either

of fact or in law, was or was not committed by the court on the appeal. Were the rule otherwise, as the authorities say, there would be no end to litigation.

From these observations and holdings, it follows that the alternative writ of mandamus heretofore issued should be and is recalled, and the application for a permanent writ denied. Such is the order. Costs to the defendant Stephen Hays Estate, Inc., the real party defendant in interest in the cause.

ELIAS HANSEN, Chief Justice (concurring in results).

Much is said in the prevailing opinion in the present cause by way of justification for what was said and decided in the former case of *Utah Copper Co.* v. *Stephen Hayes Estate, Inc.*, 83 Utah 545, 31 P. (2d) 624, 632. I shall not in the present proceeding, undertake to justify or further discuss the reasons which led me to dissent to the former opinion. Suffice it to say I still entertain the views there expressed, but in the light of the fact that such views did not prevail, I must yield assent to what was there determined.

We are all agreed that resort may be had to mandamus to enforce the lower court to carry out the mandate of this court. When the mandatory part of an opinion or judgment is ambiguous or uncertain resort may be had to the whole thereof to ascertain what is meant. However, when the mandate of this court is clear and certain it is the duty of the court below to give it effect according to the plain import of the language used. In the case of *Utah Copper Co.* v. *Stephen Hayes Estate, Inc.*, supra, this court directed "the lower court to dismiss the action as to tracts C and D." That language is not susceptible of construction. The duty of the lower court in such respect is made as plain as language can make it. True, the mandate of this court does not stop there, but continues, "and to proceed to determine the damages to which the defendant is entitled by reason of the taking and the severance of the several other tracts; the

parties being given leave to amend their pleadings if they desire to do so, as they may be advised." Of necessity the leave granted to amend the pleadings refers to the pleadings touching land other than tracts C and D. Upon the lower court complying with the mandate to dismiss the action as to tracts C and D there remained no pleading to amend with respect to those tracts. Mandamus will not issue to require the court below to permit an amendment to the pleadings with respect to tracts C and D in the face of the mandate heretofore made directing the dismissal of the action as to those tracts.

MOFFAT, Justice (concurring).

I concur in the order that the alternative writ of mandamus should be and is recalled and the application for a permanent writ denied. The order entered in the case of *Utah Copper Co.* v. *Stephen Hayes Estate, Inc., No. 5302,* decided by this court on March 28, 1934, and reported in 83 Utah 545, 31 P. (2d) 624, 632, and out of which this proceeding arises, contained the following:

"Since the plaintiff has no legal right to take tracts C and D by these proceedings, the judgment will have to be reversed as to them. But the plaintiff may nevertheless desire to take the other tracts which are described in the complaint, and its right to do so is not seriously controverted by the defendant. The damages to which the defendant is entitled for the several tracts which plaintiff may desire to take have not been separately ascertained or determined, and cannot be determined upon this record. Because of this, the judgment will have to be reversed in its entirety and the cause remanded for a new trial, with directions to the lower court to dismiss the action as to tracts C and D and to proceed to determine the damages to which the defendant is entitled by reason of the taking and the severance of the several other tracts; the parties being given leave to amend their pleadings if they desire to do so, as they may be advised."

In pursuance of that order, plaintiff in its application to this court for a writ of mandamus, among other things, alleges:

"On January 18, 1936, said District Court made and entered its order granting plaintiff's motion for leave to file in said cause said amended and supplemental complaint."

It would appear that the action of the District Court in so doing complied at least with that part of this court's order whereby the trial court was directed to permit the parties to amend their pleadings if they desired so to do. It is then further alleged that the defendant in said cause filed its motion to dismiss said cause as to tracts C and D in the complaint therein described, its demurrer to plaintiff's amended and supplemental complaint, and its motion to strike certain designated parts thereof, and after setting out at considerable length the amended complaint which was filed in the District Court as indicated from the pleading in this cause, plaintiff herein prays that an order be issued from this court,

"directed to and requiring said defendants to show cause why writ of mandamus should not issue, commanding said District Court of the Third Judicial District of the State of Utah, for Salt Lake County, and the Honorable Judges thereof, and each of them, to grant plaintiff's leave not only to amend its said pleadings in substance as set forth in plaintiff's amended and supplemental complaint * * * but to try and determine each and all the issues sought to be raised thereby, to set aside and vacate any order to the contrary, if such shall have been made in said cause, and to proceed in said suit to judgment upon the issues raised by said amended and supplemental complaint. * * * "

Under the order of this court, the judgment was reversed in its entirety and the cause was remanded for a new trial with directions to dismiss the action as to tracts C and D. The record discloses that the court has dismissed the action as to tracts C and D. What proceedings may be pursued, the form which the complaint may take, or the attacks which may be made thereon, do not appear to be within the purview of a writ of mandamus but are matters within the jurisdiction of the trial court and should be pursued by the

trial court as it sees fit, so long as it keeps within the terms of the mandates of this court. It does not appear that the trial court has failed or refused to obey the order or mandate of this court and, so far as appears, no misconstruction of the order has been charged, nor any acts which are beyond the province of the court in carrying out the mandate of this court. If such had been charged or made to appear, the remedy, of course, is generally recognized as a proper one for a writ of mandamus. But in so far as I am able to see, any errors the court may commit in limiting the terms of an amended complaint, in passing upon demurrers or motions filed in attack thereon, are matters which may be reviewed on appeal.

WOLFE, Justice (concurring in results).

I concur. As stated by the opinion we are not called upon again to review the questions raised in the case of *Utah Copper Co.* v. *Stephen Hayes Estate, Inc.*, 83 Utah 545, 31 P. (2d) 624. I think it unnecessary in this case to review, interpret, or comment on the propositions set out and decided in that case. The former opinion is clear and is now the law of the case regardless of whether it is thought to be right or wrong. The fact that counsel contend that this court found facts contrary to the findings of the trial court or decided matters not involved in that suit need not here be considered. It may be conceded that that decision is only the law of the case in so far as it speaks to the matters involved in the appeal or necessary to the decision, but counsel are less likely to get into difficulties by treating as final this court's pronouncements on matters which it thinks are involved in the appeal and in reference to which it has decided, than by seeking themselves to become the final arbiter of what this court should have decided and treat the rest as unessential and immaterial to the appeal.

By what is here said, I do not mean to convey the idea that we should at all hazards adhere to what some former

opinion has said. In my dissent to the order denying a rehearing in the case of *Rodriquez* v. *Industrial Commission*, 86 Utah 266, 38 P. (2d) 748; Id., 86 Utah 273, 43 P. (2d) 189, I gave expression to the thought that when it appeared that this court, in the light of more information or deeper insight furnished by the practical way in which our interpretation of the law was working out, found it wise to modify or reverse a former opinion, it should do so. In the case of *Atwood* v. *Cox, Judge*, 88 Utah 437, 55 P. (2d) 377, the inconsistency of some of our cases was noted. Likewise, in *State* v. *Hougensen*, 91 Utah 351, 64 P. (2d) 229. We are human and amenable to error and I know full well and do not expect otherwise, that many of the opinions which I write will, by the march of events, or by greater minds, be found inadequate. And it may be said if this is so, why not be ready to change in the same case when opportunity is offered. The answer is that a case must, by the orderly processes of the law, come to rest in a certain manner. To open by this extraordinary writ all the questions which were supposedly set at rest by the denial of the petition for rehearing would mean that no one would know whether such denial was really a final disposal of a case. Moreover, the decision in the former review was very special. It did not lay down legal principles which would have wide application. It is doubtful whether ever again that same situation may arise. Where we have gone wrong in a case when the principles are of wide application and much harm would ensue by permitting such decision to persist, I would not want to say that the matter should not be rectified at the first opportunity. But even then, if possible, it were better to bring up a new case. The questions raised in this case do not in any way come under that category.

The only question we have here is whether the proceedings in the court below are in obedience to and in pursuance of the mandate of that former opinion. A writ of mandamus might be sued out to require the court to follow the mandatory part of a decision handed down, but hardly to

require the lower court to entertain supplemental pleadings or amendments which would raise matters contrary to or inconsistent with the mandatory part of the decision. I agree that the former decision foreclosed any right to amend the pleadings so as to bring in the question of the condemnation of tracts C and D. Perhaps that opinion should not have required the dismissal of the action as to those tracts, but should have permitted amendments to the complaint permitting condemnation of tracts C and D for a right of way for a pipe line. I can hardly agree in view of the case of *Stevens & Wallis* v. *Golden Porphyry Mines Co.*, 81 Utah 414, 18 P. (2d) 903, that such would be a change in the cause of action. But the point is that the decision commanded dismissal and that it is the law of the case. I see no other way to affect condemnation for such purposes except by a new action.

FOLLAND, Justice (concurring).

I concur in the order contained in the main opinion for the reasons stated therein and in the concurring opinions in support thereof.