## STATE v. BYINGTON.

No. 7176.   Decided December 17, 1948.   (200 P. 2d 723.)

See 22 C. J. S., Criminal Law, sec. 657; 30 Am. Jur. 767. Disqualification of judge in pending case as subject to revocation or removal, note, 162 A. L. R. 641.

*W. Lee Skanchy,* of Logan, for appellant.

*L. E. Nelson,* Dist. Atty., of Logan, *A. John Brennan,* of Salt Lake City, and *Grover A. Giles,* Atty. Gen., for respondent.

WADE, Justice.

.  On January 13, 1948, defendant Howard S. Byington, was convicted of second degree perjury and sentenced to one year imprisonment in the county jail from which judgment and sentence he appeals. The matter grew out of a hearing held on December 8, 1947 on an order to show cause why he should not be punished for contempt in failing to pay alimony and support money according to a decree of divorce previously entered against him on May 9, 1947.

Although both the court and opposing counsel suggested to defendant that he get counsel, defendant proceeded in such hearing without an attorney. After his former wife had testified, the court told defendant he could cross-examine her and when he declined the court told him that he could take the witness stand in his own behalf. This he also refused. Thereupon the court said,

"Well come up here. I want to ask you some questions then."

After he was sworn the court asked opposing counsel to examine him. In the course of this examination, defendant testified that he had remarried but did not remember the date or the place thereof but said that it was about a month ago and somewhere in Montana. Thereupon the judge asked whether he had a license and a marriage certificate. He answered that he did have them but not with him. On further questioning by the court, he said that his wife was home, whereupon the court adjourned that hearing and ordered him to go to his home with the sheriff and get his wife. When the sheriff and defendant returned with Ivella Hutchison, the woman to whom defendant claimed he was married, she was sworn and both she and defendant each

testified that they were married but they were very uncertain as to the time and place thereof.

Thereupon the court found defendant guilty of contempt and committed him to the county jail for 30 days and ordered the county and district attorneys to investigate the matter of violation of the criminal laws. The defendant and Miss Hutchison were then taken to the sheriff's office and questioned by the county attorney where they reiterated their testimony in greater detail. A few days later both of them admitted that they had never been married to each other, and signed a written statement to that effect. In this statement they explained that for some time they had been openly living together as man and wife and as a result thereof they had a child two or three months old; that they had intended to be married and had on that account falsely testified that they were married. Thereafter, they were separately charged and convicted of perjury. They were actually married prior to the trial.

At the defendant's trial on the perjury charge, the court received in evidence over his objection, the transcript of his testimony in the hearing on the order to show cause to the effect that he was married to Miss Hutchison; also his signed statement that he had so testified. Defendant contends that under these circumstances by the use of this evidence, he was compelled to be a witness and give evidence against himself in a criminal case in violation of the 5th Amendment to the Federal Constitution and of Article 1, Section 12 of our State Constitution.

It is generally recognized that the privilege against self-incrimination provided for in those constitutional provisions protects a witness as well as a party accused of crime in a civil as well as in a criminal action from being required to give testimony which tends to incriminate him. It is further generally recognized that any fact which is "a necessary or essential part of a crime" if testified to by a witness would tend to incriminate him. The quota-

tion is from Marshall, in Aaron Burr's Trial, Robertson's Rep. I, 208, 244. See 4 Wigmore on Evidence, Sections 2260 to 2268. For a thorough discussion of the entire question see Id. Sections 2250 to 2283.

Generally such question is raised on objection to giving of testimony but that is not necessarily the case. Here the witness did not claim the privilege when the question was asked. But he did decline to testify and testified only when required to do so by the court. He was a layman without experience with courts, without advice of counsel or knowledge of his right to refuse to give self-incriminating testimony. When he was asked whether he had remarried he was openly and notoriously living as husband and wife with this woman who was not his wife and a child had been born from that relationship. Not being married to her he was guilty of fornication. When this question was put to him he was required to either refuse to answer or to admit one of the elements of such crime or give false testimony. Since he did not know that he had the right to refuse to answer his only alternative was to admit his guilt or give false testimony. That persons shall not be placed in such a position is one of the purposes of these constitutional provisions. Under such circumstances such evidence is not admissible in a subsequest prosecution for perjury otherwise the immunity from giving self-incriminating testimony would be of no value to him.

That such evidence under these circumstances is inadmissable was held in *State* v. *Caperton,* 276 Mo. 314, 207 S. W. 795. There the defendant was required to give testimony before a grand jury which was investigating whether he was living with a woman not his wife, in open and notorious adultery, without any warning of his immunity from giving self-incriminating evidence. He testified that he was married to the woman but was later convicted of perjury in so testifying. The court set aside this conviction on the ground that evidence of his testimony before the grand jury was not admissible in such prosecution because

his immunity from giving self-incriminating evidence would thereby be violated. The court said:

"As a basis for this prosecution defendant was haled before a grand jury of his county, and there under oath compelled to answer certain questions, truthful answers to which would (as the state is now here insisting) have required a confession of his guilt of another crime then under investigation by this jury. When defendant was thus compelled by these proceedings before the grand jury, either to 'confess and be hanged' or to swear a lie, he took refuge (again, as the state now here contends) in the latter alternative. Promptly he was indicted for perjury, and this prosecution and conviction followed.

"It is plain to be seen that the inquisition whereat the alleged perjury was committed was in a most serious aspect a violation of defendant's constitutional right not to be compelled to testify against himself. Section 23, art. 2, Const. [Mo. R. S. A.]; *State* v. *Young,* 119 Mo. 495, 24 S. W. 1038; *State* v. *Faulkner,* 175 Mo. 546, 75 S. W. 116; *State* v. *Thornton,* 245 Mo. 436, 150 S. W. 1048. The least that may be said of the proceedings by which this defendant was induced to perjure himself is that the state, in thus compelling either a sworn confession or perjury, was morally an aider and abettor in the perjury charged.

"The law which governs inquisitions before grand juries does not contemplate that an accused person, whose alleged crimes are at the time the subject of inquiry may be compelled to come before such a jury and there in secret and on oath, without counsel or friends be required either to confess his guilt or to commit perjury. *State* v. *Thornton,* 245 Mo. loc. cit. 440, 150 S. W. 1048. No objection was made that defendant's testimony before the grand jury, being involuntary, was inadmissible, but so much is said in palliation of defendant's guilt, if in fact he be guilty, and in criticism of the proceeding adopted to compel him to commit the crime herein complained of."

To the same effect is *Twiggs* v. *State,* Tex. Cr. R., 75 S. W. 531. There defendant was convicted of perjury before a grand jury which was investigating a charge of rape against another man. In the course of his testimony, he denied having committed adultry with a sister of the woman involved in the rape charge, of which offense he was later convicted. The court held that the testimony given before the grand jury was not admissible in evidence on his trial for perjury, because he was denied his privilege to not give

incriminating evidence against himself, even though he did not claim such privilege.

Here the testimony was not given in the course of an investigation against him for a criminal offense as in the *Caperton case,* supra. But the constitutional provisions grant the immunity from giving such testimony in a criminal case and under that provision, even though he first gave such testimony in a civil action, evidence thereof may not be used against him in a criminal case. See references to Wigmore above cited. Under the circumstances of this case, he was compeled to answer questions which, if answered truthfully, he would have to give evidence of one element of a crime which he had committed. Here, as in the two cases above cited, he did not object to answering but he did not know that he had a right to make such objection. If such testimony can be used against him in a case of this kind then his privilege against self-incrimination may be violated and he can still be convicted as a result of such violation by the court. Such was not the intention of the framers of our Constitutions.

In so holding, we do not blame the court for asking these questions. Since he was in contempt, if he were a married man the amount of punishment might well be less than if he were a single man. But the fact that it was proper to ask those questions does not make his false answer admissible in a later prosecution for perjury.

The court also erred in refusing to disqualify himself because of bias and prejudice. In *Haslam* v. *Morrison,* 113 Utah 14, 190 P. 2d 520, 523, we held that bias and prejudice for or against a party to a suit is grounds for disqualification, but that the mere filing of an affidavit to that effect does not establish the disqualification of a district judge. The judge in the first instance may pass on his own qualification and his decision on that point is subject to review by this court, and where the application for a change is made in bad faith it is the duty of a district

judge who is not biased or prejudiced to refuse to disqualify himself.

The *Haslam* v. *Morrison* case and the instant case are so different in their facts that the decision in that case is not controlling here. That case was a civil action while this one is criminal. Not only is a litigant entitled to have his case tried by an impartial and unbiased judge, but when, as here, he is a defendant in a criminal case, he is entitled to have the severity of his sentence determined by a jurist who has no personal bias or prejudice toward him as a defendant. In this action, the defendant was convicted of a crime which is punishable by imprisonment in the county jail for not more than one year or by a fine of $500 or by both fine and imprisonment. A judge who had not instigated the prosecution of this offense might have considered imposing a lesser sentence than the maximum; or he might have even given consideration to suspending the execution of the sentence. While these are privileges that are considered after conviction, they are part of our criminal procedure and are important to a defendant, particularly in a case where the offense is committed largely from legal coercion.

In the case of *Haslam* v. *Morrison,* supra, Mr. Justice Wolfe, speaking for this court, said:

"The general practice in this jurisdiction has been for judges to disqualify themselves whenever an affidavit of bias and prejudice against them has been filed. As a general rule, we think this is a commendable practice. The purity and integrity of the judicial process ought to be protected against any taint of suspicion to the end that the public and litigants may have the highest confidence in the integrity and fairness of the courts. This is not to say that the mere filing of an affidavit of bias and prejudice, ipso facto casts such suspicion on the judge, and upon his integrity and fairness, that he ought to disqualify himself. However, it is ordinarily better for a judge to disqualify himself even though he may be entirely free of bias and prejudice. If either litigant files an affidavit of bias and prejudice. 'Next in importance to the duty of rendering a righteous judgment is that of doing it in such a manner as will beget no suspicion of the fairness or integrity of the judge.' *Crook* v. *Newborg*

& *Son*, 124 Ala. 479, 27 So. 432, 433, 82 Am. St. Rep. 190; 30 Am. Jur. 767, Judges, Sec. 53."

The foregoing quotation is more cautionary than mandatory. However, it should suggest to trial judges what this court believes to be the better practice when an affidavit of bias and prejudice is filed in good faith.

Defendant filed his motion for change of judge and supported the motion with an affidavit of bias and prejudice. The facts in this case establish that the defendant could not be charged with bad faith in seeking to have another judge hear his cause. Accordingly, there was no duty imposed on the judge to hear and dispose of the perjury charge. Be that as it may, the motion was heard by the judge and overruled. Such a ruling presumes that the judge found he was not prejudiced and biased, and, under our previous holdings, unless the record establishes as a matter of law a contrary state of mind, then the ruling should be affirmed.

With these general observations as a starting point, we turn to the facts and circumstances of this particular case. The facts relied on to establish bias and prejudice on the part of the judge are contained in the transcript of the testimony given at the hearing on the order to show cause why defendant should not be punished for contempt. This hearing undoubtedly followed the course of similar hearings up to the point where the trial judge apparently concluded that the defendant in this case was not telling the truth. From this point on, the record indicates a change in the attitude of the judge. He was no longer the arbiter between two litigants. He then appears to have assumed the role as prosecutor of the defendant. After the plaintiff in the contempt hearing had concluded the presentation of her evidence, the defendant was asked by the court as to whether or not he desired to testify. He announced that he did not. However, the court ordered him to the witness stand for the purpose of interrogation. Counsel for the plaintiff was

given the opportunity to commence the examination but, when the evidence disclosed that defendant was claiming to have re-married, the judge took over. He not only examined the defendant to determine his ability, financial or otherwise, to comply with the order of the court, but he pursued a course of examination which drove the defendant into a situation where defendant was faced with three alternatives, namely, falsify his testimony, admit the commission of a crime, or face a contempt charge for refusal to testify. The judge, being dissatisfied with the defendant's testimony concerning his marriage and apparently believing it to be untrue, concluded to immediately determine its truth or falsity. He ordered the defendant to accompany the sheriff to defendant's home for the purpose of bringing his claimed wife back to court to testify. Neither party to the contempt proceedings had requested her to appear as a witness and while a judge should seek to obtain all the essential facts necessary to properly decide an issue, he should proceed strictly in accordance with legal requirements. Orderly procedure was forgotten and the rights and competency of the witness were ignored in an effort to immediately determine the truth of defendant's story. The speed and irregularity in those proceedings are mentioned merely to emphasize the effort to literally "catch the defendant in a lie."

Aside from the summary manner in which the contempt hearing was handled, we quote some of the remarks made by the trial judge to the defendant in that hearing. While the record does not give the court room atmosphere, the hostile or friendly manner of the judge, the tone in which the remarks were made, nevertheless, the remarks clearly indicate that before the hearing was over, the trial judge was firmly convinced the defendant was guilty of perjury. The quoted statements are not preceded by the question, but they are sufficient to establish the belief of the trial judge. After the defendant announced he did not desire to testify, the

following statements were made by the judge during his examination of the defendant:

"Well, come up here. I want to ask you some questions." "Well, now let's quit fooling around here." "Then I am going to give you just about five minutes to get down there Mr. Byington and bring her back here. We will take a recess for about ten minutes so far as this case is concerned, and you may go with the sheriff and bring her back." "I think somebody's being taken for a ride."

and

"You will be remanded into the custody of the sheriff in execution of this judgment and the district and county attorney are here and I am submitting this case to them for an investigation with respect to the violation of any of the criminal laws of the State of Utah."

These statements, taken in sequence, indicate the development of a belief that defendant was guilty. Moreover, when they are considered in connection with the haste, the procedural irregularities, and the lack of consideration shown the defendant and his alleged wife, it is apparent that the judge became hostile to the defendant and biased and prejudiced to the extent that an opinion of guilt was formed by the judge before he ordered the county and district attorney to investigate. While the last quoted statement does not limit the investigation by the county and district attorney to the crime of perjury, that is the only crime suggested by the record and the only one the trial judge could reasonably have had in mind. For all practical purposes, the judge became the complaining witness in this prosecution. If actions and words can adequately picture bias and prejudice, then it is present in this case. I can well imagine that any reasonable person in defendant's predicament could never be convinced that he was fairly tried, convicted and sentenced. Rather, he would in good faith feel that the judge was in fact a prosecutor and that his constitutional rights to a fair trial by an impartial judge had been ignored.

While defendant must establish actual bias and prejudice and that the existence or non-existence of these elements

must, in the first instance, be determined by the trial judge, nevertheless, the acts, conduct and pronouncement of the judge, overwhelmingly preponderate against his finding that he was unbiased and unprejudiced. This finding is subject to review by this court and the trial judge erred when he refused to disqualify himself.

The conviction of the defendant is set aside with directions to dismiss the action.

McDONOUGH, C. J., and PRATT, J., concur.

LATIMER, Justice.

I concur in that part of the opinion which holds that Judge Morrison erred in refusing to disqualify himself because of bias and prejudice.

WOLFE, Justice.

I dissent.

There is no assignment of error such as is required by Rule VIII of the rules of this court. That rule, insofar as material here, provides as follows:

"Appellant's brief shall contain:

\*     \*     \*     \*     \*

"2. A statement of the errors upon which he relies for a reversal of the judgment or order of the court below.

"3. A statement and arguments upon the particular questions involved for determination." 100 Utah xlv.

What defendant probably intended as his assignment of errors appears in his brief as follows:

"The appellant contends that the conviction should be nullified and set aside for the following reasons.

"I. That the proceedings from the beginning were irregular and illegal.

"A. The charge of perjury was based on immaterial testimony irregularly received.

"B. The testimony on which the charge was based was on incriminating questions and answers of the appellant.

"C. A witness was illegally compelled to testify.

"D. Appellant was entitled to change of judge because of bias and prejudice of the trial judge."

The best that can be said for the above quoted statement is that it presents an outline for a rather generalized argument against the proceedings in the court below. With the possible exception of part D, to which I shall later advert, it does not point out a single ruling or order of the trial court as erroneous. The statement under I is merely a general statement that the record is full of errors, without saying what the errors are. The statement under A is so ambiguous and uncertain as to be practically meaningless. It might be construed as an attack upon the sufficiency of the complaint or information, or upon the sufficiency of the evidence, or upon the rulings of the court in receiving evidence. It certainly fails to indicate, with any degree of certainty, what rulings of the court are contended to be erroneous. The same may be said of the statement set forth under B. The statement under C gives no hint as to what witness was illegally compelled to testify or to what matter he or she was compelled to testify. The best that can be said for these purported assignments of error, is that they invite the court to make a general search of the record, and find error. Under familiar and well established principles, such assignments of error are not sufficient, and should be summarily disposed of. The party seeking to overturn a judgment of the trial court has the burden of showing with particularity that prejudicial error was committed. It is not sufficient to throw out a general invitation to this court to search the record for error.

Even taking the most charitable possible view of these purported assignments of error, and following the argument advanced by defendant in his brief, there is no showing of prejudicial error. Much of defendant's argument is directed to the rulings and actions of the trial court in the contempt

proceedings. Although the transcript of the contempt proceedings was admitted in evidence as an exhibit, it is before us merely as evidence of what transpired on that occasion, and it is not before us for any other purpose. No matter what errors may have been committed at that time, they cannot be corrected in this proceeding. If defendant were aggrieved by any order of the trial court at that time, he had his remedy by way of appeal. He cannot, in this proceeding, complain of any errors which may have been committed in the contempt proceeding.

The majority holds that the trial court erred in admitting in evidence the transcript of testimony of the contempt proceedings. Although plaintiff objected to the admission of the transcript in evidence, the objection was not based on his constitutional privilege against self-incrimination. Rather, the objection was to the effect that such evidence was incompetent. It is a principle too well settled to require citation of authority that the court's rulings on objections to the admission of evidence are not available on appeal unless the grounds of objection are stated. And where evidence is objected to on one ground in the trial court, a different ground of objection may not be urged in this court. The trial court must have had an opportunity to pass upon it.

Where counsel fails to state seasonably the reasons for his objection, any error in admitting such evidence will not be available on appeal. So far as the record reveals, the question of constitutional privilege was raised for the first time in this court, and therefore it should not be available to the appellant as grounds for reversal.

Apart from the procedural defects, and the failure of counsel to make a proper record in the court below, there are substantive reasons why the case should not be reversed. The constitutional privilege against self-incrimination is a personal one, which may be waived. As stated in Wigmore:

"The privilege is merely an *option of refusal,* not a prohibition of inquiry.

"1. *Witness.* Hence it follows that when an *ordinary witness* is on the stand, and a criminating fact, relevant to the issue, is desired to be proved through him, the question may be asked and it is for him then to say whether he will exercise the option given him by the law. It cannot be known beforehand whether he will refuse. Besides to prevent the question would be to convert the option into a prohibition.

\* \* \* \* \*

"Accordingly, it is universally conceded that the question may be put to the *witness on the stand* \* \* \*." 8 Wigmore on Evidence, 3d Ed., Sec. 2268.

The learned author goes on in the same section as follows:

"4. *Civil case.* For a *party defendant* in a *civil cause having a criminal fact as its main issue,* \* \* \* it would \* \* \* seem that the technical right of the plaintiff, to call the opponent as a witness and question· him until it appears that the privilege will be exercised, should be conceded to operate. \* \* \*"

The prevailing opinion apparently holds that it was the duty of the trial judge in the contempt proceedings to advise defendant of his constitutional privilege against self-incrimination.

As to the duty of the trial judge to advise a witness of his privilege against self-incrimination, Wigmore, in Sec. 2269, argues strongly against such a rule, giving several-cogent reasons for his position, and concludes by saying:

"In the United States both the rule and the trial custom vary in the different jurisdictions. No doubt a capable and painstaking judge will give the warning, *where need appears;* But *there is no reason for letting a wholesome custom degenerate into a technical rule.*" (Italics added.)

See also 6 Jones, Commentaries on Evidence, 2d Ed., 4923-4925, Sec. 2488.

In the case of *State* v. *Caperton,* 276 Mo. 314, 207 S. W. 795, and *Twiggs* v. *State,* Tex. Cr. R., 75 S. W. 531, cited and relied upon by the majority, the court failed to recognize that the constitutional privilege was not a prohibition against inquiry, but only an option of refusal. In those cases

the court adopted the rule, criticized by Wigmore, that there was a duty on the part of the judge to advise the witness of his constitutional privilege.

It is not necessary to express an opinion at this time whether in certain cases there may be an absolute duty on the part of the trial judge to advise a witness of his constitutional privilege. Certainly no such duty should exist where the criminal implications of the question are not apparent to the judge Otherwise in practically every case the trial court would be bound to advise every witness of his constitutional privilege, since almost any question, when superimposed on a certain peculiar factual background, may have criminal implications. The necessary and inevitable result of such a rule would be that many witnesses would wrongfully and without just cause withhold their testimony under pretext of exercising their constitutional privilege.

The prevailing opinion concedes the propriety of the trial court's asking defendant whether he was married. Ordinarily such a question has no criminal implications. However, under the peculiar facts of this case, it did. Whether the trial judge was aware of the criminal implications involved at the time he commenced his interrogation of defendant in the contempt proceedings is not made to appear in the record. And in the absence of such a showing we cannot presume improper or collateral motives on the part of a judicial officer. As stated in the prevailing opinion, it was very proper for the court to ask the defendant whether he was married. When that question was answered affirmatively the perjury was committed. As the interrogation progressed, the criminal implications of the questions should have become apparent to the trial judge, but an advice of constitutional privilege at that time would have come too late. The damage was already done.

Defendant, having failed to assert his constitutional privilege, either in the contempt proceedings or in the perjury trial, has waived it and should not, at this late date, be permitted to assert it.

For each and all of the above stated reasons, I must dissent from the result reached by the majority. I desire to add, however, that I do not wish to be understood by this opinion as condoning the action of the trial judge in the contempt proceedings. It appears from a reading of a transcript of that proceeding that the trial judge seemingly acted in a manner not called for by the nature of the judicial inquiry to which he should have limited himself. However, the contempt proceedings are not before us for review. That record is before us only as evidence of what transpired at that time, and any errors which may have been committed at that time are beyond the scope of this appeal.

I must also dissent from the view that the trial judge erred in refusing to disqualify himself, although I am sympathetic with much that is said in the prevailing opinion as regards that point. I agree that whatever may have been the defects in the other assignments of error, the issue of whether the trial judge was biased and prejudiced is properly before this court. I further agree that it would have been much better for the trial judge to have disqualified himself in this case. However, I am not prepared to say that, as a matter of law, he committed error in refusing so to do. We cannot presume improper motives on the part of judicial officers. Unless the record reveals quite certainly the bias and prejudice of the trial judge we must sustain his ruling that he was not biased or prejudiced.

The majority has lifted from their context, certain statements and comments of the trial judge at the contempt proceedings, which are relied upon as a sufficient showing of bias and prejudice. While I do not mean to approve of all the comments of the trial judge, and some of them appear to be quite unjudicious, I am of the opinion that they do not establish bias and prejudice as a matter of law when viewed in their context.

At the conclusion of the plaintiff's evidence in the contempt proceeding, the trial judge offered the defendant an

opportunity to cross-examine his former wife, which offer was declined. The judge then advised defendant of his right to testify in his own behalf, which right defendant waived. The judge then said,

"Well, come up here. I want to ask you some questions."

The cold record before us does not indicate the tone of voice employed by the judge in making this statement, but there is no reason to believe that it was said in a harsh, hostile, or unfriendly manner. To me it seems a natural and normal way of asking a person in the court room to take the witness stand. While a judge should be tactful and courteous toward persons in his court, he need not necessarily use the most delicate or polished language in communicating with them.

After defendant took the stand at the judge's request, he testified that he had married in Montana about 30 days before. When asked to specify the place in Montana, the witness answered that

"I don't know where it was."

At that point, the court made the statement,

"Well, now, let's just quit fooling around here."

It is understandable that the court should have become provoked with the answer of the witness. Certainly it is highly improbable, and contrary to general human experience, that a man should not be able to remember for a month's time, the place where he married. The judge may have been well justified in speaking sharply to a witness who quite apparently was not testifying frankly. Certainly trial judges have some leeway in handling witnesses. A stinging remark may be proper or even necessary in rare cases to secure the proper cooperation of the witness. Courts in the conduct of a judicial inquiry may and should insist that witnesses coming before them testify frankly.

After defendant testified that his wife could tell the courtt where they were married, the court said:

"Then I'm going to give you just about five minutes to get down there, Mr. Byington, and bring her back here. We'll take a recess for about ten minutes so far as this case in [sic] concerned, and you may go with the Sheriff and bring her back."

The effect of this statement must depend to a large extent upon the tone of voice in which it was uttered. While the statement in cold print might be read in such a way as to make it indicate definite hostility on the part of the trial judge toward defendant, it may as well be read to indicate nothing more than assiduousness on the part of the trial judge to determine the true facts. And where two inferences are possible, one pointing to improper or unjudicial conduct, and the other consistent with proper judicial motives, I think the doubt must be resolved in favor of the judge. Moreover, even if it did reveal hostility, rarely is irritation or annoyance of this sort of sufficient moment to become deep seated. It is soon forgotten.

After the trial judge had examined defendant's purported wife as to certain details of their assumed marriage, and she had also testified that she couldn't tell where the marriage had taken place, he asked her whether she had a marriage license and where it was, to which she answered,

"It's either in my personal belongings at my mother's home or somewhere between Buel, Idaho and Blackfoot and here."

The judge then commented,

"I think somebody's being taken for a ride."

It is not difficult to understand why the trial judge was irked, after having received a series of evasive answers, and having heard a story which was, at best, highly improbable. And while the comment was not in the best of judicial taste, I am not prepared to say that it showed bias or prejudice. At most, it would indicate a temporary irritation of the judge caused by the nature of the testimony.

At the conclusion of the contempt proceeding the judge submitted the case to the county and district attorneys "for an investigation with respect to the violation of any of the criminal laws of the State of Utah."

I am of the opinion that it is an unwholesome precedent to hold that a district judge who merely refers a matter which may have occurred in his court room to a prosecuting attorney for investigation has thereby demonstrated himself to be biased and prejudiced and therefore disqualified to try any criminal prosecution which may ensue.

It appears to me that the trial judge acted in an arbitrary and summary manner in the contempt proceedings; that he was not as patient nor as tactful as he might have been in the handling of witnesses; that he failed to impose upon himself a judicial restraint in the face of provocative conduct on the part of witnesses; and that he resorted to extrajudicial methods to procure evidence and determine the facts. And while none of this is to be condoned, and while it might have been reversible error had there been an appeal from the contempt proceedings, none of these factors taken alone, nor all of them taken together, establish bias and prejudice as a matter of law, although certainly the judge might wisely, under such circumstances have referred the matter to another judge.

While it may be true, as observed in the prevailing opinion, that the defendant in this case would feel that he was not accorded a trial by a fair and impartial judge, that fact is no indication of bias and prejudice on the part of the judge. It is undoubtedly true that in many cases where the judge is free of any taint of bias and prejudice, that an unsuccessful litigant feels that he has not been accorded a fair trial. Questions of this sort must be determined upon legal principles, and not upon the feelings of the litigants.

In the recent case of *Haslam* v. *Morrison*, 113 Utah 14, 190 P. 2d 520, 523, quoted in the prevailing opinion, we

discussed at some length the question of disqualification of a judge for bias and prejudice. While, as pointed out by Mr. Justice Wade, the factual background of that case was in many respects substantially different from that in the case at bar, the same fundamental questions were involved, and the principles there laid down should control here. We there held

"that actual bias and prejudice on the part of the trial judge for or against any litigant will disqualify him, but the existence of bias and prejudice is a question addressed to the sound discretion of the judge against whom the affidavit is filed."

We further held that the

"mere filing of an affidavit of bias and prejudice does not ipso facto disqualify a judge,"

and further that the

"*fact that a judge may have an opinion as to the merits of the cause* or that he has strong feelings about the type of litigation involved, does not make him biased or prejudiced." (Italics added.)

Under the rules laid down by us in the *Haslam* case, I am of the opinion that we cannot say, as a matter of law, that the trial judge was biased and prejudiced.

For the reasons above stated, I am of the opinion that the judgment of the trial court should be affirmed.