THE STATE v. HENRY THORNTON, Appellant.

Division Two, November 13, 1912.

1. PERJURY: Testimony Before Grand Jury: Incriminating Statement. If the grand jury, in calling defendant before them a second time, were seeking evidence to convict him of perjury committed by him in a statement he made before them on a former occasion, then the statement he made on his second appearance is not admissible evidence to show he committed perjury on such former occasion.

2. ——: ——: ——: Involuntary Witness Against Self. Evidence involuntarily given before a grand jury should not be admitted to prove a crime theretofore committed by the witness giving such testimony. An involuntary confession of guilt is not admissible against a party making it when he is placed on trial for the crime to which the confession relates. And where defendant was brought before the grand jury a second time, and admonished by one of the jurors that he had "better make a clean breast of it and come across," and was not advised that, if he changed his testimony and gave evidence different from that given by him upon his former examination, he might be prosecuted for perjury, he was not a voluntary witness,

and the testimony he then gave cannot be used as evidence against him in a subsequent prosecution for perjury alleged to have been committed on his first examination.

3. ————: **Instruction: Necessary Proof: Admissions.** An instruction on the quantum of proof in a perjury case is erroneous if it fails to inform the jury that the falsity of defendant's testimony as given by him before the grand jury must be proven by at least one credible witness, aside from any admissions or statements made by defendant himself. The jury cannot take into consideration incriminating confessions or admissions made by defendant before the grand jury in determining whether or not there was sufficient corroboration of the falsity of defendant's testimony.

Appeal from Boone Circuit Court.—*Hon. David H. Harris,* Judge.

REVERSED AND REMANDED.

*Harris & Finley* for appellant.

(1) The court erred in admitting the evidence as to defendant's statements on his second appearance before the grand jury, because said statements were not voluntary, and to admit the same was in violation of Art. 2, Sec. 23, Constitution. State v. Young, 119 Mo. 495; State v. Senn, 32 S. C. 392; Tuttle v. People, 33 Colo. 243; State v. Clifford, 86 Ia. 550; State v. Newcomb, 220 Mo. 65. (2) The court erred in admitting the testimony of the witness, Charles Matthews, as to defendant having procured whiskey for him. State v. Stike, 149 Mo. App. 104; State v. Phillips, 233 Mo. 299. (3) The court erred in giving the erroneous instructions 1 and 3, and in failing therein to properly instruct the jury as to the corroboration necessary to convict the defendant of the crime of perjury. Schwartz v. Commonwealth, 21 Am. Rep. (Mass.) 365; Butler v. State, 38 S. W. (Tex.) 46; State v. Heed, 57 Mo. 253; State v. Hunter, 181 Mo. 335.

*Elliott W. Major,* Attorney-General, and *John M. Dawson,* Assistant Attorney-General, for the State.

(1) The action of the court in the admission and rejection of evidence is not here for review. One may be guilty of perjury even though his testimony, if truthfully given, would have been self-incriminating. State v. Faulkner, 175 Mo. 546. And this is true, although the witness is compelled to testify. State v. Lehman, 175 Mo. 619; State v. Day, 100 Mo. 242; State v. Ackerman, 214 Mo. 225. The principal witness was corroborated. 1 Chitty on Crim. Law, 565; 3 Greenleaf on Ev., Sec. 198, p. 198. (2) Instruction 1, as to the declaration of the crime and the punishment thereof: State v. Gordon, 196 Mo. 185; instruction 2 as to reasonable doubt: State v. Barr, 198 Mo. 35; and instruction 3 defining corroboration: State v. Houts, 181 Mo. 316, are all in accordance with approved precedents of this court, and no complaint can be made against them.

BROWN, P. J.—Defendant was convicted in the circuit court of Boone county of the crime of perjury, and appeals.

The offense of which defendant stands convicted is alleged to have been committed about April 4, 1911, during an investigation by the grand jury of Boone county to ascertain if illegal sales of intoxicating liquors had taken place in that county.

After being summoned before the grand jury and sworn by its foreman, defendant was asked if he "purchased any whiskey from R. I. Woodard in Columbia, Missouri, during the last twelve months." To this question defendant replied, "I have not bought any whiskey since Doctor Conway was a duly licensed physician, and then, on prescriptions given by him." This answer was committed to writing and signed by the defendant.

By other witnesses it was shown that Dr. Conway's license to practice medicine was revoked in May, 1910 (about eleven months before defendant was summoned before the grand jury).

After giving the above recited evidence, defendant was temporarily excused, with directions to come before the grand jury again when requested to do so. About four days later, said grand jury again called defendant as a witness, and by propounding further questions and admonishing him that he had "better make a clean breast of it and come across," succeeded in securing from defendant the following additional statement, which was also committed to writing and signed by him:

"On the evening of about March 18, 1911, I bought two quarts of whiskey from Woodard's drug store. I gave three dollars for the two quarts. Mr. Woodard waited on me. I had no prescription for whiskey. He did not ask me for prescription.

"Henry Thornton."

Four witnesses testified that on March 18, 1911, they gave defendant three dollars with which to purchase whiskey for them; and that he brought them two quarts of whiskey and requested them "not to blow it on him" if they were summoned before the grand jury.

One other witness testified that he procured whiskey through defendant in the same manner less than one year before the grand jury investigation.

Defendant did not testify as a witness in this cause.

Within less than an hour after the defendant appeared before the grand jury the second time, an indictment was returned charging him with committing perjury during his first examination by swearing that he had not bought any whiskey "since Doctor Conway was a duly licensed physician, and then on prescription given by him."

Defendant was tried and convicted on this indictment.

To secure a reversal it is urged that the trial court erred in admitting, on the part of the State, defendant's testimony as written and signed when he was called before the grand jury the second time.

The defendant contends that said statement so introduced was not voluntarily made, and that its admission amounted to a violation of his constitutional rights, in that it compelled him to testify against himself; as prohibited by Art. 2, Sec. 23, Constitution of Missouri of 1875.

Objection was made to the introduction of said statement, on that ground, and exception duly saved when it was admitted.

In the case of State v. Young, 119 Mo. l. c. 520, it was held by this court: "The Constitution means more than the protection of the accused on his final trial when his rights are scrupulously guarded by the courts. It as clearly protects him from being forced to testify against himself in any and all preliminary investigations, whether before the coroner, grand jury or the justice on his preliminary examination. The immunity afforded him by the Constitution is broad enough to protect him against self-crimination 'before any tribunal, in any proceeding.' [Counselman v. Hitchcock, 142 U. S. 547; Cullen v. Commonwealth, 24 Gratt. 624; State ex rel. v. Hardware Co., 109 Mo. 118.]"

The doctrine announced in the Young case has been generally followed by this court. [State v. Naughton, 221 Mo. 398; State v. Lehman, 175 Mo. 619, l. c. 628; and cases therein cited.]

In the latter case the doctrine is announced that while one guilty of a crime may refuse to answer ques-

tions propounded to him by a grand jury, if truthful answers to such questions would tend to criminate him; yet, if he does testify, he must speak truthfully, or subject himself to the pains and penalties of perjury. In the same case the further doctrine is announced that if the accused does testify before the grand jury and his answers tend to show him guilty of the crime then under investigation, such answers are not admissible against him when he is indicted and placed on trial for the offense.  [175 Mo. 628.]

The facts in the case at bar are a little different from any case to which our attention has been called. Here, the grand jury, in obtaining the second statement made by defendant, and which he claims was erroneously admitted in evidence, was apparently not seeking evidence against defendant, but merely investigating a charge of illegal sales of intoxicating liquors against another party, to-wit, R. I. Woodard.

However, the statement obtained from defendant tended strongly to prove that he had committed an independent crime not connected with the subject of the investigation, to-wit, the crime of perjury in giving false testimony on his first examination.

If in calling the defendant before them the second time, the grand jury were seeking evidence to convict him of perjury committed in his first statement, then upon the authorities before cited, the second statement made by him was not admissible in evidence against him in this case.

If a witness is to be protected against criminating statements made when interrogated by a grand jury about a crime which he is suspected by the grand jury of having committed, we can see no reason why he should not also be protected against involuntary evidence which he may give tending to show that he has committed an independent crime not then under investigation.

There is no good reason why the mental status of the grand jurors should have any bearing upon the effect or admissibility of evidence *involuntarily* given before them.

No written charge is necessary to authorize grand juries to inquire into the commission of crimes. They have jurisdiction of all classes of crimes. Subpoenaes issued to bring witnesses before grand juries do not designate what crimes they have under investigation; nor is there any statute requiring them to notify witnesses what crimes they are investigating. There is no law prescribing the rules of evidence for grand jury investigations; in fact, such investigations are most frequently conducted by men possessing no knowledge of the law of evidence. The interrogatories they propound may and often do take a wide range and embrace many different crimes.

When these facts are taken into consideration, there is good reason for holding that evidence involuntarily given before a grand jury should not be admitted to prove any crime theretofore committed by the witness giving such testimony. If a witness voluntarily appears before a grand jury and voluntarily testifies, a different rule would, of course, prevail.

The spirit of the law is that an *involuntary* confession of guilt is not admissible against the party making same when he is placed on trial for the crime to which such confession relates. This is upon the theory that to admit a confession of guilt not voluntarily made, would amount to compelling the witness making such confession to testify against himself, as prohibited by Sec. 23, Art. 2, of our Constitution.

This doctrine is supported by Mr. Wharton in his work on Criminal Evidence (10 Ed.), page 1281, which reads as follows: "Where the accused voluntarily testifies under oath before a grand jury, his confession may be given in evidence against him. But, if the accused is taken before the grand jury and compelled

to testify, by it, and not voluntarily, such a confession cannot be used in evidence against him."

The record in this case shows that when the defendant was brought before the grand jury the second time, he was admonished by one of the grand jurors that he had "better make a clean breast of it and come across," though he was not advised that, if he changed his testimony and gave different evidence from that given upon the first examination, he might be prosecuted for perjury.

Upon the whole record we are convinced that the second statement made by defendant before the grand jury was not voluntary, but was made to escape some sort of punishment which defendant thought the jury or court possessed the power to inflict upon him; therefore, his second statement was not admissible in evidence in this case.

Further error is assigned in the action of the court in giving instructions numbered 1 and 3, in which the following language appears:

"1. . . . You should not convict the defendant unless you believe and find that the falsity of the statement upon which, by the indictment under these instructions, the charge against him is based, has been to your satisfaction fully established, either by the testimony of more than one creditable witness, or by that of one such witness corroborated by other evidence in the cause, which convinces your minds of the truth of the testimony of such single witness to the fact, and of the falsity of the statement; and not then, unless you further find from the evidence the existence of all the other elements of the offense, and of the facts necessary to authorize his conviction, as such other elements and facts are hereinbefore fully set forth. In other words, before you can find the defendant guilty under the indictment, it devolves upon the State to prove to your satisfaction by the testimony of two credible witnesses, or one credible witness and corroborating cir-

cumstances proven by other credible witnesses in the cause, beyond a reasonable doubt, that Henry Thornton, since the license of the said Dr. Conway, as a physician, was revoked and before the time of his giving such testimony before said grand jury and within one year next before the 10th of April, 1911, did purchase whiskey from the said R. I. Woodard.

"3. The court instructs the jury that to 'corroborate' means to strengthen, to confirm by additional testimony, to add strength to. The testimony of a witness is said to be corroborative when it is shown to correspond with the representation of some other witness, or to comport with some facts otherwise known or established; and that the term 'corroborating circumstances,' as used in these instructions, means such facts and circumstances detailed in evidence which tend to strengthen and confirm other testimony or evidence in the case."

These instructions are erroneous, in that they fail to inform the jury that the falsity of defendant's evidence, as given by him before the grand jury, must be proven by at least one credible witness, aside from any admissions or statements made by the defendant himself.

This point was before us and carefully considered in the case of State v. Hunter, 181 Mo. 316, l. c. 337 and 338. In that case, like the case at bar, the conviction rested partly upon criminating statements made by the defendant himself; and we held that the jury in that class of cases must be instructed that they cannot take into consideration confessions or admissions of the defendant in determining whether or not there was sufficient corroboration of the falsity of defendant's evidence.

It is also contended by the defendant that the evidence was not sufficient to authorize the court to submit the case to the jury; but as the evidence may be

different upon a second trial, we will not pass on that assignment.

For the trial court's error in admitting the statement involuntarily made by defendant when he was before the grand jury the second time, and for its further error in giving instructions numbered 1 and 3, the judgment is reversed and the cause remanded.

*Ferriss* and *Kennish, JJ.,* concur.