425 P.2d 155

The STATE of Utah, Plaintiff
and Respondent,

v.

C. W. BRADY, Jr., Defendant
and Appellant.

No. 10653.

Supreme Court of Utah.

March 15, 1967.

Harley W. Gustin, Gustin & Richards, Salt Lake City, for appellant.

Phil L. Hansen, Atty. Gen., Ronald N. Boyce, Asst. Atty. Gen., Salt Lake City, for respondent.

TUCKETT, Justice:

This is a criminal action wherein appellant was charged with perjury in the first degree. The defendant was convicted in

the court below and from the verdict and judgment appellant has appealed to this Court.

Indictment accused the defendant of having testified falsely on the 7th day of May, 1965, before the Honorable Maurice D. Jones, Judge of the City Court, Salt Lake City. The charging part of the indictment is as follows:

That on or about the 7th day of May, 1965, at the County of Salt Lake, State of Utah, the said C. W. BRADY, JR. committed Perjury in the First Degree by falsely testifying before the Honorable Maurice D. Jones, Judge of the City Court of Salt Lake City, State of Utah, after having been duly sworn upon oath to tell the truth to the following material facts:

Q. Did Mr. Newsom inform you of the time of departure and when you were going to leave? Did he have anything to do with the arrangements for the trip?

A. I don't think so, no.

Q. Did you ever discuss this with Mr. Newsom prior to his submitting the lease to the County that was eventually signed?

A. Never did I ever discuss the machine with anybody.

Q. After you returned to Salt Lake, and before you were informed that Midvale Motors had purchased this machine, was the County testing this machine?

A. You bet, we were.

Q. And were any reports submitted to you as to the result of the tests?

A. Mr. Nerdin contacted me quite frequently, and went out to the scene quite frequently to see the tests.

Q. Do you remember whether or not it was used during September of 1963?

A. No, I would not know.

Q. Do you know whether it was used during October of 1963?

A. No, You'd have to go back to the records on that.

Q. Do you know whether it was used during November of 1963?

A. No, but I'm sure the records we'd have would show whether it was or was not.

Q. Are you aware of the fact that the machine was not used at all during January and February and part of December?

A. As I recall, the machine was used, and I think we used it in the Chesterfield area, and I think we used the machine right up until Christmas.

Q. Do you know that it sat in the lot down there not being used through January and February?

A. No, I didn't know this.

Q. Do you remember Mr. Schemahorn back in Indiana discussing the fact that

they put their machine away from Labor Day until May?

A. No, I do not. We used this machine up until December, I'm sure, right until Christmastime.

Q. Did Mr. Nerdin ever inform you that the machine was sitting idle during January?

A. Oh, I knew the machine was—as a matter of fact, at that time we used it, like I say, up until December, and the weather moved in, and we was hoping to get the project completed in Chesterfield, and we left the machine in Chesterfield. And then we had to take it from Chesterfield back out to the shop, and this was sometime in January. We had to get the machine out of there.

Q. What other type of equipment have you leased in the past for the County?

A. I think we leased a garbage packer or two of them through the Purchasing Department. I think we also and are presently leasing from—well, you can check the name. It would be in the records. Leasing some sweepers.

During the year 1963 and a portion of the year 1964 covered by Judge Jones in his questioning of the defendant, Mr. Brady was chairman of the Salt Lake County Board of Commissioners, in charge of roads and bridges. It appears from the record that Judge Jones was proceeding under what is referred to in the record as a "John Doe complaint," *which complaint was never filed nor made a matter of record in the City Court.* The charging part of the unfiled complaint that Judge Jones was proceeding under is as follows:

That John Doe, Jane Doe and Richard Doe on or about the 23d day of August, A.D. 1963, at the County of Salt Lake, State of Utah, did commit the crime of accessory to the crime of attempting to bribe an executive officer, in violation of Title 76, Chapter 1, Sec. 45, Utah Code Annotated 1953, as follows, to-wit: That the said John Doe, Jane Doe and Richard Doe, at the time and place aforesaid, having full knowledge that a felony had been committed, to-wit: the attempted bribery of an executive officer, in violation of 76–1–30 and 76–28–3, Utah Code Annotated 1953, did conceal the same from a magistrate; contrary to the provisions of the statute of the state aforesaid, in such cases made and provided, and against the peace and dignity of the State of Utah.

It appears that the judge of the city court was proceeding pursuant to the provisions of Section 77–11–2, U.C.A.1953 and Section 77–11–3, U.C.A.1953. The first of these statutes is as follows:

Person having knowledge must make. —Every person who has reason to believe that a crime or public offense has been committed must make complaint against such person before some magis-

trate having authority to make inquiry of the same.

The second statute above referred to is as follows:

Complainant to be examined.—When a complaint is made before a magistrate charging a person with the commission of a crime or a public offense, such magistrate must examine the complainant, under oath, as to his knowledge of the commission of the offense charged, and he may also examine any other persons and may take their depositions.

In this case we are faced with the problem of determining the nature and the scope of the investigation permitted by our statute. The statutes of some states provide that a magistrate may act as a "one-man grand jury" to make a general investigation into whether or not a crime has been committed and if so, by whom.[1] The states of Wisconsin, Kansas and South Dakota authorize a "John Doe proceeding" which has similar objectives.[2] It will be observed that the language of the statutes of the above mentioned states is entirely different than our statutes above referred to. For example, the language of the statutes of the State of Wisconsin provides in part as follows:

If a person complains to a magistrate that he has reason to believe that a crime has been committed within his jurisdiction, the magistrate shall examine the complainant on oath and any witnesses produced by him [or by the District Attorney] * * * to ascertain whether a crime has been committed and by whom committed.[3]

It will be noted that the language of the statute just quoted is not designed to investigate a charge against a specific person as required by our statute.

■ It appears that the legislature by limiting our statute to cases where a person is charged with the commission of an offense did not intend to extend the scope of the magistrate's investigation to a general inquisition of crime or public offenses. Had the legislature intended to authorize the "John Doe proceedings"—a general preliminary investigation,—it undoubtedly would have provided for certain safeguards as have the other states which have adopted that procedure. It appears that our statute, Section 77–11–3, U.C.A.1953, was taken from the New York Code.[4] The New York court in dealing with the statute decided that it gave no general power of inquisition to a magistrate. The court stated: "To the grand jury, and to it alone, is given the power of investigation without a definite charge. The secrecy of the grand jury pre-

---

1. Mich.Comp.Laws 1948, §§ 767.3, 767.4.
2. Wis.Stat.1965, § 954.025; Kan.Stat.Ann. 1963, § 62–301; S.D.Code 1939, Supp. 1960, § 34.0901.
3. Wis.Stat.1965, § 954.025.
4. N.Y.Code Crim.Proc., §§ 145 as amended, 148 (McKinney 1958).

vents injuries to reputations from roving investigations \* \* \*."[5]

█ It will be observed that the complaint before the magistrate out of which the indictment arose failed to charge any person with commission of an offense, and it is doubtful whether it stated the public offense at any event. Be that as it may, it appears that the proceeding before the judge of the city court was an investigation unauthorized by the statute and as such was nugatory. It is further observed that the complaint was not filed with the court and any hearing conducted by a judge of that court was not a judicial proceeding as contemplated by Section 76–45–7, U.C.A. 1953.[6]

The appellant's motion to suppress the testimony or deposition given by him should have been granted.

The judgment of the lower court is reversed and the appellant is ordered discharged.

CALLISTER, J., concurs.

ELLETT, Justice (concurring in the result).

I agree with the result reached in the prevailing opinion but cannot agree that a committing magistrate cannot lawfully examine witnesses under oath before a written complaint is filed. The statutes set forth in the prevailing opinion make it the duty of a person having reason to believe that a crime or public offense has been committed to make complaint before some magistrate. Section 77–10–1, U.C.A.1953, defines a complaint to be "a statement in writing made to a court or magistrate that a person has been guilty of some designated offense." This statute, when read in connection with those quoted in the main opinion, makes it the duty to sign a complaint, but the practical application of the law in relation to the necessities of the situation requires that an oral complaint be made first. This is done for the purpose of causing the magistrate to act. If he believes the complaining witness, he will prepare the written complaint himself or direct the county attorney to do so under his direction. He is not compelled to issue a written complaint at all, and he may think that the complaining witness is not being truthful and so want further information before determining whether to issue the complaint or not.

Section 77–11–3, U.C.A.1953, reads:

When a complaint is made before a magistrate charging a person with the commission of a crime or public offense,

5. In re Both, 200 App.Div. 423, 192 N.Y.S. 822, 825 (1922); People v. "Doe", 47 Misc.2d 975, 263 N.Y.S.2d 607, 615 (1965).

6. Crow v. State, 55 Ga.App. 288, 190 S.E. 65; People v. Brophy, 49 Cal.App.2d 15, 120 P.2d 946; State v. Osborne, 172 Kan. 596, 241 P.2d 506; Dubbs v. Lehman, 100 Fla. 799, 130 So. 36, 38.

such magistrate must examine the complainant, under oath, as to his knowledge of the commission of the offense charged, and he may also examine any other persons and may take their depositions.

This clearly says the magistrate may examine other witnesses and may take their depositions. I fail to see how he would do either without first administering an oath to the witness.

I am convinced that in the orderly and practical operation of initiating criminal proceedings a magistrate has both the right and the duty to examine under oath witnesses other than the complainant.

In the case of State v. Currier, 86 Ariz. 394, 347 P.2d 29, our sister State of Arizona had before it the question of whether a complaint could be signed upon information and belief. Rule 1, subsec. B of their Rules of Criminal Procedure, 17 A.R.S. provided:

When a complaint is made to a magistrate that an offense has been committed, he shall examine on oath the complainant and any witness the complainant produces and any witness subpoenaed by the magistrate. If the county attorney so requests, the magistrate shall subpoena witnesses for examination. The magistrate may take the affidavit of any such witness and cause the affidavit to be subscribed by the person making it.

At page 31 the court said:

It will be seen thereby that when the complaint is laid before the magistrate, if he has any reason to believe that the person who signed it * * * is acting merely on unwarranted suspicions, he has the right, before issuing the warrant, to examine not only the complainant but as many witnesses as he may see fit, and until he is satisfied, not only from the complaint but from the testimony under oath of all of the witnesses whom he desires to call, that there is reasonable ground to believe that the accused has committed the crime charged, he is not required to issue the warrant.

The case of State v. Davie, a Wisconsin case reported in 62 Wis. 305, 22 N.W. 411, was a case involving a misdemeanor. The court said at page 413:

* * * and it is by our own statute that this complaint is to be tested. The language is: "Upon complaint made to any justice of the peace by any constable, or other person, that any such offense has been committed within the county, he shall examine the complainant on oath, and the witnesses produced by him, and shall reduce the complaint to writing, and cause the same to be subscribed by the complainant, and if it shall appear that such offense had been committed, the said justice shall issue his warrant reciting the substance of the complaint, requiring the officer to whom it is directed forthwith to arrest the accused," etc. The plain meaning is that a verbal or oral complaint is first made, then the justice examines

the complaint [sic] on oath, and other witnesses produced by him, if he produces any, and he shall then reduce the complaint to writing and cause it to be subscribed by the complainant; that is, the complainant first mentioned.

Therefore, I cannot agree that the proceeding was nugatory or unknown to the law. Whether a written complaint is legally objectionable and subject to being quashed for failure to state a crime should be of no avail to a witness if he commits perjury in giving his testimony or deposition before the magistrate whose duty it is to inquire into crimes.

The charging part of the complaint which the magistrate secretly had in his possession was as follows:

On this 22nd day of April, A.D. 1965, before me, M. D. JONES, Judge of the City Court within and for Salt Lake City, Salt Lake County, State of Utah, personally appeared Delmar L. Larson, who, on being sworn be me on his oath, did say that John Doe, Jane Doe and Richard Doe on or about the 23rd day of August, A.D. 1963, at the County of Salt Lake, State of Utah, did commit the crime of ACCESSORY TO THE CRIME OF ATTEMPTING TO BRIBE EXECUTIVE OFFICER, in violation of Title 76, Chapter 1, Section 45, Utah Code Annotated, 1953, as follows, to-wit:

That the said John Doe, Jane Doe, and Richard Doe, at the time and place aforesaid, having full knowledge that a felony had been committed, to-wit: the attempted bribery of an executive officer in violation of 76–1–30 and 76–28–3, Utah Code Annotated, 1953, did conceal same from a magistrate;

contrary to the provisions of the Statute of the State aforesaid, in such cases made and provided, and against the peace and dignity of the State of Utah.

While the defendant herein was not mentioned by name in the complaint, he was in fact the very executive officer referred to therein. The fact that there was a complaint in existence was not even made known to the defendant or his counsel, and under our concepts of fair play and due process of law, I think the defendant had a right to be advised that the inquiry was against him.

The taking of a bribe by an executive officer is made a felony by Section 76–28–3. Utah Code Annotated 1953, and the defendant had a constitutional right not to give evidence against himself. Article I, Section 12, Constitution of Utah.

Therefore, this defendant stands in a different position from the ordinary witnesses who give evidence because here he was inveigled into testifying in a case primarily intended to show that he himself had committed a felony. By being tricked into testifying under the circumstances of this case, his constitutional rights were abridged, and the testimony elicited by the magistrate

should not be used against the defendant in a trial for bribery nor on a charge of perjury growing out of his testimony. This being so, the question of the materiality of his alleged false statements and of whether, if false, they were corruptly given need not be decided. For these reasons I would reverse the case and discharge the defendant.

CROCKETT, C. J., concurs in the opinion of ELLETT, J.

HENRIOD, Justice (concurring).

I concur, but desire to make some observations as to Mr. Justice Ellett's concurring opinion,—which opinion I think not pertinent in this case.

He says that he "cannot agree that a committing magistrate cannot lawfully examine witnesses under oath before a written complaint is filed." The main opinion does not say otherwise.

No complaint was filed, docketed, or given a number here. Brady was "requested" to appear before a magistrate, was put under oath, under a so-called "John Doe" complaint, without knowing or being advised as to who "John Doe" was. He was not the complainant,—and here is where

Mr. Justice Ellett's argument that witnesses may be examined orally under oath before a written complaint is issued falls.

In this case Brady was not a complaining witness at all. It was not a legitimate witness against anyone except an undisclosed "John Doe," whose identity was locked in the bosom of a magistrate. Mr. Justice Ellett seems to assume that Brady was a complaining witness when the former was asked to give testimony which really was against himself. The whole tenor of my learned colleague's concurrence, including the inapropos cases he cites and quotes, seems to make this obvious. Brady, I am sure, had no intention to complain against "John Doe," whoever he was, and certainly not against himself. Why we should concern ourselves with hypothetics that don't fit the facts of this case, I don't know. There is a certain virtue in fair play, irrespective of statute, as to who may be examined before or after a complaint is filed, that should not be violated by a prostituting statute or cases not factually pertinent in this case.

I respectfully suggest that the main opinion does not espouse anything other than the suggestions made by Mr. Justice Ellett, but simply does not canvass them because they are not pertinent here.