429 P.2d 969

The STATE of Utah, Plaintiff,

v.

The Honorable Henry RUGGERI, District Judge, Defendant.

No. 10730.

Supreme Court of Utah.

July 3, 1967.

Phil L. Hansen, Atty. Gen., Jay Banks, Dist. Atty., Salt Lake City, for plaintiff.

Harley W. Gustin, Gustin & Richards, Salt Lake City, for defendant.

ELLETT, Justice:

The State of Utah seeks an extraordinary writ to compel the defendant judge to reverse his holding and to admit in evidence testimony which he had theretofore held inadmissible.

Rule 65B, U.R.C.P., is as follows:

(a) Special Forms of Writs Abolished. Special forms of pleadings and of writs in habeas corpus, mandamus, quo warranto, certiorari, prohibition, and other extraordinary writs, as heretofore known, are hereby abolished. Where no other plain, speedy and adequate remedy exists, relief may be obtained by appropriate action under these rules, on any one of the grounds set forth in subdivisions (b) and (f) of this rule.

(b) Grounds for Relief. Appropriate relief may be granted:

\* \* \* \* \* \*

(3) Where the relief sought is to compel any inferior tribunal, or any corporation, board or person to perform an act which the law specially enjoins as a duty resulting from an office, trust or station; \* \* \*.

Subdivision (f) deals with habeas corpus matters.

While the rule abolishes extraordinary writs by name, nevertheless the remedy remains the same as when names were important, and in this case the State is simply

seeking the relief which would be sought by way of the old writ of mandamus.

This matter is closely akin to the case of State v. Brady, 18 Utah 2d 434, 425 P.2d 155, recently decided by this court. There the defendant was entrapped into testifying against himself in a matter pending before a committing magistrate. Here the same thing occurred before the grand jury. Brady was subpoenaed before the grand jury, and without being told that he was the target of an investigation regarding himself and others, he testified after having asked for an attorney and being told that he could not have one in the grand jury room.

He was indicted for perjury for the testimony so given. He made a motion before the defendant judge to suppress the testimony given in the grand jury room, and the judge after hearing the arguments on the motion took the position that the constitutional rights of Brady had been violated, and the motion was granted.

The defendant contends that this court by an extraordinary writ cannot review errors of judgment.

It will be noticed that while the district court is a court of general jurisdiction, it is an inferior court to the Supreme Court for the purposes of the granting of an extraordinary writ.

The rule quoted above provides that we give appropriate relief where an inferior tribunal should be compelled to perform an act which the law specifically enjoins upon it. Had His Honor refused to rule upon the motion, we would have had no doubt that this court could compel him to rule, but we know of no case which would permit us to direct him *how* to rule; nor do we think that, now he has made his ruling, we can by mandamus compel him to change it.

In 34 Am.Jur., Mandamus, § 2, the following language is used:

Mandamus may be defined as a command issuing from a court of law of competent jurisdiction, in the name of the state or sovereign, directed to some inferior court, tribunal, or board, or to some corporation or person, requiring the performance of a particular duty therein specified, which duty results from the official station of the party to whom the writ is directed, or from operation of law.

Section 4 reads as follows:

Mandamus is a remedy at law the nature and purpose of which is indicated in the definition already given. It is employed to compel the performance, when refused, of a ministerial duty, this being its chief use. It is available also to compel action, when refused, in matters involving judgment and discretion, but not to direct the exercise of judgment or discretion in a particular way, or the re-

traction or reversal of action already taken in the exercise of either.

This court has had many occasions to discuss the writ and how it should be used.

The case of State v. Hart, Judge, 19 Utah 438, 57 P. 415, was a case wherein the judge refused to impanel a jury of twelve men as requested by the prosecuting officer. In discussing the matter at page 443, 57 P. at page 416, this court said:

> While it is clear that mandamus will not lie to direct or control the decision of an inferior court in a matter within its discretion, *or to direct a court how it shall decide a case,* the law is clearly established that when a court erroneously refuses to act in matters within its jurisdiction the writ will lie to compel it to do so. (Emphasis added.)

In Merrill on Mandamus (section 203) it is said that when a court refuses to try a case, erroneously deciding that it has no jurisdiction, it will be compelled by writ of mandamus to assume jurisdiction, and proceed with the case. It is now well established that when an inferior court has refused to entertain jurisdiction on some matter preliminary to a decision of a case before it on the merits, or refuses to act when the law requires it to act, or where, having obtained jurisdiction in a case it refuses to proceed in due exercise thereof, a writ of mandamus is a fitting and proper remedy to set such court in motion, and to speed the trial of a case, so as to reach the proper end, when no action below was had on the merits; but such right will not lie to an inferior court to correct alleged errors occurring in the exercise of its judicial discretion.

Again in Ketchum Coal Co. v. Christensen, Judge, 48 Utah 214, at page 221, 159 P. 541, at page 544, this court used the following language:

> This court may not, by means of a writ of mandate, control or direct the discretion of an inferior court, however humble that tribunal may be. In any case, therefore, which has not proceeded to judgment, the inferior court may merely be compelled to act or go forward in case it refuses or fails to do so, but its judicial acts or discretion may not be controlled to any extent by a superior court by a writ of mandate.

In Richards v. District Court of Weber County, 71 Utah 473, at page 478, 267 P. 779, at page 781, this court made the following statement:

> It is elementary that judicial or discretionary powers are not controlled by mandamus. A court may, by writ of mandate, be required to entertain jurisdiction and determine controversies where it refuses or fails to do so, but the decision itself is left to the court. This is fundamental.

In the case of Utah Copper Co. v. District Court of Third Judicial Dist., etc., 91 Utah 377, 64 P.2d 241, the District Court refused to allow certain amendments to the copper company's complaint and struck some of the allegations already made. This court was asked to grant a writ of mandamus. After citing authorities, the court at page 391 of the Utah Reports, 64 P.2d at page 247, said:

The reasons for such holdings are that where a court has jurisdiction of the subject-matter and of the parties, *rulings made on demurrers*, permitting or refusing amendments to pleadings, *motions to strike*, etc., involve and invoke jurisdiction not only requiring but demanding judgment of the court with respect thereto, and no matter how erroneous the rulings may be in such particular, they may not be reviewed on any of the extraordinary remedies. This court is firmly committed to that doctrine. (Emphasis added.)

This court has been liberal in granting extraordinary writs when there is no plain, speedy and adequate remedy at law to prevent a miscarriage of justice. See Mayers v. Bronson, 100 Utah 279, 114 P.2d 213, 136 A.L.R. 698. However, the granting of the writ is always a matter of discretion with this court and never a matter of right on behalf of the applicant. See Ferris, The Law of Extraordinary Legal Remedies, page 230.

The Supreme Court of our sister state of Nevada had occasion to pass upon a matter similar to the instant case. There a grand jury had not indicted local county commissioners but had filed a report with the court charging the commissioners with malfeasance and misfeasance in office. The commissioners filed a motion to expunge and strike from the record the report filed by the grand jury. The trial judge denied the motion, and a writ of mandamus was requested of the Nevada Supreme Court. That case is entitled State ex rel. Weber, et al., v. McFadden, Judge, 46 Nev. 1, 205 P. 594. At page 595 of 205 P. it was said:

Counsel for respondent insist that mandamus is not proper remedy in this case, and we agree with their contention. Whether it was respondent's legal duty under the facts stated in the petition to grant the motion cannot be inquired into in this proceeding. The act sought to be reviewed and reversed was not a ministerial act. The power to strike or refuse to strike the report from the files of the court involved the exercise of purely judicial functions. It is a rule of general acceptance that mandamus will not lie to control discretion or revise judicial action. 18 R.C.L. 297–299; High's Extraordinary Legal Remedies (3d Ed.) pp. 31, 32, 169, 174. This rule is well settled in this state. State [ex rel. Combination Silver Min. Co.] v. Curler, 4 Nev. 445; State ex rel. Hetzel v. Board

of Commissioners of Eureka County, 8 Nev. 309; Hoole v. Kinkead, 16 Nev. 217; State [ex rel. Office Specialty Mfg. Co.] v. Curler, 26 Nev. 347, 67 Pac. 1075; State v. [Ninth Judicial] District Court, 40 Nev. 163, 161 Pac. 510. In the latter case this court recognized the general acceptance of the rule in the following language:

> "It needs no citation of authority to support the well-established rule that the writ of mandamus will not assume the function of a writ of error, nor will it serve to require the inferior tribunal to act in a particular manner or to enter any particular judgment or order. On the contrary, it serves only to compel the doing of some act which it is the clear, legal duty of the lower court in some way to do."

Great mischief would be occasioned if this court undertook to review rulings of the trial court before the case was completed. If we were to grant this writ, it would lead the lawyers to believe that they could come to this court during the noon recess and have us correct the rulings of the trial court in the matter of admitting or denying evidence in a case.

There is another reason why we should deny this writ. The proceeding herein is a civil matter involving a dispute between the district attorney and the judge as to how the judge should rule on the admission of evidence in the case of State v. Brady.

The defendant Brady is not a party hereto, and any ruling we make will not be binding upon him. To rule upon the merits of the dispute between the district attorney and the judge would be to make a decision behind the back of the defendant, and that without giving him an opportunity to be heard. It would simply be a ruling upon a moot question.

While I am convinced of the correctness of the foregoing position, I am unable to convince a majority of this court to that effect. I, therefore, must confess that the opinion expressed hereinabove is not determinative of this case and that the law of this case is as follows:

Since the trial judge suppressed the testimony relating to what Mr. Brady said before the grand jury, there could be no statement presented to a jury which could be proved false and, therefore, the ruling made effectively disposes of the case before the trial court. This court will, therefore, consider the merits of the criminal case out of which the instant proceedings grew.

One Brady was county commissioner and as such was being publicly criticized for paying more rental on a bit paving machine than the cost of buying the same would have been. He was subpoenaed to appear before a grand jury duly and regularly convened. At the time of his appearance Brady indicated that he would like counsel. He was informed that the statutes of Utah

forbid the presence of counsel in the grand jury room. Unbeknown to him, he was at that very time the target of the grand jury investigation which subsequently indicted him and others on a criminal conspiracy charge, setting forth 143 overt acts. Brady was subsequently indicted for perjury in connection with the testimony elicited by the district attorney before the grand jury.

The defendant judge herein pursuant to a preliminary motion of the defendant and after hearing full argument of counsel granted the motion and suppressed the testimony given by the grand jury. By this writ we are asked to review the ruling made by the defendant judge.

Utah has a constitutional provision which provides that an accused shall have the right to counsel and shall not be compelled to give evidence against himself. Article I, Section 12, Constitution of Utah.

In Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, the United States Supreme Court laid down a controversial ruling of law which applies to prosecuting attorneys as well as to police officers during custodial interrogation. The substance of the holding is set forth in one paragraph as follows:

Our holding will be spelled out with some specificity in the pages which follow but briefly stated it is this: the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning.

When Brady entered the grand jury room pursuant to a subpoena, he was in custody. He could not leave until he was excused.

▮ An ordinary witness before a grand jury must give testimony except

where it might incriminate him for some past misdeed, but he can't refuse to testify on the ground that if he commits perjury, he would be subjected to incrimination. All witnesses as such must give testimony regarding any matter of which they have knowledge, which testimony is not privileged and is relevant to the matter under investigation by the grand jury, except where the testimony might tend to incriminate the witness for some past act.

However, one being investigated for crime is not just a witness and cannot be treated as such. The target of an investigation is an accused within the meaning of the Constitution, and when he is detained in any significant way, he may not be interrogated unless he is advised of the charges against him then under consideration. To fail to so warn one so being investigated is to entrap him and to violate his constitutional privilege against self-incrimination.

Whether the examination needed to be terminated when Brady requested counsel need not be decided, for we think it was improper to call him in the first place when the purpose was to secure testimony from his own lips to be used against him in a trial which would result from the proposed indictment.

In the case of People v. Tomasello, 48 Misc.2d 156, 264 N.Y.S.2d 686, at page 690, it was said:

It can hardly be gainsaid that one who is named by the Grand Jury as one who aided and abetted the commission of crimes and conspired to commit crimes that were under investigation by that Grand Jury was a target of the investigation. If a possible defendant or target of an investigation is subpoenaed before a Grand Jury and there testifies, whether or not he claims or asserts his privilege against self incrimination, his constitutional privilege is deemed violated. "An automatic result of the violation of this constitutional privilege is that the defendant is protected not only from indictment based on any incriminating testimony which he may have given, but also from use of such evidence." [Citation omitted.]

The instant perjury indictment is based upon the testimony of the defendant before the Grand Jury. It having been given under subpoena by a possible defendant, it was testimony under compulsion in violation of the defendant's constitutional privilege. That testimony may not be used against the defendant for any purpose. Such immunity is complete and includes immunity against a charge of perjury for falsely testifying before the Grand Jury.

The New York Constitution provides: "No person shall be subject to be twice put in jeopardy for the same offense; nor shall he be compelled in any criminal case

to be a witness against himself." Article I, Section 6.

In the case of People v. Steuding, 6 N.Y.2d 214, 189 N.Y.S.2d 166, 160 N.E.2d 468, a case out of the Court of Appeals of New York, cited as authority in the case of People v. Tomasello, supra, it was held:

By virtue of the Constitution of this State (art. I, § 6)—and it is solely the Constitution of New York with which we are now concerned—a prospective defendant or one who is a target of an investigation may not be called and examined before a Grand Jury and, if he is, his constitutionally-conferred privilege against self incrimination is deemed violated even though he does not claim or assert the privilege. [Citations omitted.] An automatic result of the violation of this constitutional privilege is that the defendant is protected not only from indictment based on any incriminating testimony which he may have given, but also from use of such evidence. And the right and protection thus accorded by the Constitution may not be taken away or cut down by statute.

In the case of Twiggs v. State (Tex.Cr. App.), 75 S.W. 531, a grand jury was investigating a rape charge against a man other than Twiggs. Twiggs was subpoenaed as a witness to testify before the grand jury and was asked if he had committed adultery with a sister of the victim in the rape case. He answered, "No." Later he was convicted of adultery and was charged with perjury before the grand jury. He was not warned when he was in the grand jury room regarding the evidence which formed the basis of the prosecution against him for adultery, nor was he told of the matter under investigation except as it may have been suggested by the questions asked him. In the perjury case cited above, the court held that the testimony given before the grand jury was not admissible because the defendant was denied his privilege not to give incriminating evidence against himself even though he did not claim such privilege.

This court in the case of State v. Byington, 114 Utah 388, 200 P.2d 723, 5 A.L.R.2d 1393, held that when the court compels a person to testify, the testimony so elicited cannot be used against the witness in a perjury charge growing out of the testimony given. This court in the Byington case quoted with approval from State v. Caperton, 276 Mo. 314, 207 S.W. 795, as follows:

As a basis for this prosecution defendant was haled before a grand jury of his county, and there under oath compelled to answer certain questions, truthful answers to which would (as the state is now here insisting) have required a confession of his guilt of another crime then under investigation by this jury. When defendant was thus compelled by these proceedings before the grand jury;

either to "confess and be hanged" or to swear a lie, he took refuge (again, as the state now here contends) in the latter alternative. Promptly he was indicted for perjury, and this prosecution and conviction followed.

It is plain to be seen that the inquisition whereat the alleged perjury was committed was in a most serious aspect a violation of defendant's constitutional right not to be compelled to testify against himself. Section 23, art. 2, Const. (Mo.R.S.A.); State v. Young, 119 Mo. 495, 24 S.W. 1038; State v. Faulkner, 175 Mo. 546, 75 S.W. 116; State v. Thornton, 245 Mo. 436, 150 S.W. 1048. The least that may be said of the proceedings by which this defendant was induced to perjure himself is that the state, in thus compelling either a sworn confession or perjury, was morally an aider and abettor in the perjury charged.

The law which governs inquisitions before grand juries does not contemplate that an accused person, whose alleged crimes are at the time the subject of inquiry may be compelled to come before such a jury and there in secret and on oath, without counsel or friends be required either to confess his guilt or to commit perjury. State v. Thornton, 245 Mo. loc. cit. 440, 150 S.W. 1048. No objection was made that defendant's testimony before the grand jury, being involuntary, was inadmissible, but so much

is said in palliation of defendant's guilt, if in fact he be guilty, and in criticism of the proceeding adopted to compel him to commit the crime herein complained of.

It would seem that a witness who is unaware that he is a target of a grand jury investigation could not intelligently determine whether or not he needed counsel unless he was fully advised of the charges being considered against him; and until he has full knowledge regarding that matter, he will not know when to assert his constitutional claim of privilege against self-incrimination. It would also be difficult to believe that he could intelligently waive the right to counsel under such circumstances.

We hold that in the instant case His Honor, the defendant judge, was correct in suppressing the testimony which was elicited from Brady in the grand jury room under the circumstances then and there existing.

The order of the trial court is affirmed.

TUCKETT, J., concurs.

CROCKETT, Chief Justice (concurring specially):

It is my opinion that in the situation here shown this court should adjudicate the issue raised on its merits. If the trial court's ruling suppressing the evidence in question is valid, that effectively dis-

poses of the case against C. W. Brady. If that ruling is reversed, the trial could proceed, but with the possibility of conviction of a crime based upon a foundation the soundness of which is open to serious question. Where the trial court has made such an order, we should not be unduly concerned with either technicality of procedure or nomenclature, but should look forthrightly at the reality of the situation. Where the jurisdiction of this court has been properly invoked by an appeal from that order, it in no way transgresses propriety, but on the contrary is both within the prerogative and in conformity with the responsibility of this court in the administration of justice to adjudicate the foundational question presented. As to the propriety of this court ruling at this stage of the proceeding where "the state would have had the expense and the lower court would have gone through an extended trial" and where there is also likelihood of irreparable injury, see Meyers v. Second District Court, etc., 108 Utah 32, 156 P.2d 711, and numerous cases therein cited; and Mayers v. Bronson, 100 Utah 279, 114 P.2d 213, 136 A.L.R. 698.

There are two propositions which have a significant bearing on the correctness of the ruling. The first relates to the propriety of the elicitation of the alleged false testimony; and the second relates to its validity as the foundation for a charge of perjury.

In the proceeding before the grand jury it appears from questions to the accused by the district attorney that from Mr. Brady's experience as a deputy sheriff and as a public official, he knew of his constitutional rights: to have counsel and to refuse to answer any question that would incriminate him. He did state that he thought he ought to have an attorney, but was told (correctly under our law) that he could not have counsel in the grand jury room. See Sec. 77–19–9 prescribing persons entitled to be present before a grand jury and that, "[n]o person other than as in this section prescribed shall be permitted to be present during the sessions of the grand jury * * *."

Mr. Brady willingly went ahead and answered questions. But the important point in my mind is that the district attorney and the grand jury knew of the possible implications of crime in the questions being asked, while Brady did not. Insofar as it is shown in this record, the questioning of Mr. Brady appears to have been part of a sort of general inquiry to discover possible misdoings in county government. But there was no indication to him that he was suspected of any crime, what any such suspected crime may have been, nor what connection he or the testimony elicited might have with it. He therefore would not have any basis for knowing how the statements he was making might relate to any particular crime, nor whether they might implicate him therein.

To avoid being misunderstood, I interpose this observation: I have no doubt that if a person testifying before a grand jury falsifies concerning a material matter he can be convicted of perjury. But the proceeding should be carried on properly and with due regard for the constitutional rights of the witness. If his rights of non-incrimination and to have counsel are to be meaningful, they should be made available in a practical way when they are needed. The witness should be made sufficiently aware of the situation he faces that he is able to make an informed and deliberate choice whether to waive or to claim those rights. In that regard it seems to me that a sense of fairness and justice on the part of the district attorney and/or the grand jury would suggest that when the witness is or becomes the target of an investigation for a particular crime he should be so advised and afforded an opportunity to invoke his constitutional rights if he so desires. Cf. Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977. There is no indication that this was done here.

The other proposition which impresses me as being even more important in the overall picture of this case is that I am unable to see how the testimony referred to could properly form a foundation for a charge of perjury in any event.

The general inquiry into the activities of county government to discover any misconduct or crime not having proved very pro-ductive, there was later filed against Mr. Brady an indictment for perjury containing a long and rambling account (somewhat over four legal-size pages of single-space type) of his testimony before the grand jury, relating to a number of subjects. It was not stated in what respect any of the matter was false, nor what the claimed contrasting truth was. A bill of particulars was demanded to supply these deficiencies. In response to the question whether all of the said statements were claimed to be false the district attorney's response stated:

It is not claimed that all of the material is false.

and narrowed the actual charge of falsehood down to the following single paragraph:

The portion of the Indictment wherein the defendant testified that the bit paver was tested from four to five weeks is false. That portion of the Indictment which claims that the bit paver was used in the Chesterfield area up to and including December 23, 1963 is false, and further the testimony that the bit paver was not taken back to the Shops until January 1964 is false. The defendant's testimony that the only monthly payment paid when the bit paver was not in use was in January 1964 is false. That portion of the testimony that Nielsen made arrangements for the trip to Chicago with the defendant and that said defendant did not discuss the trip with Newsom is

228

false. That portion of the Indictment relating to said defendant's not having any work personally done for him by County employees is false.

The indictment against Mr. Brady, thus reduced to the paragraph just quoted, still had the same deficiencies as mentioned above of not informing the accused what subject the statements might be material to, wherein they were claimed to be false, nor what the claimed contracting truth was.

From reading the testimony in this record, it appears to the writer that the answers referred to as being false, in the context in which they were given, relate almost entirely to matters of memory and opinion, upon which the witness did not represent that he had any exact and certain memory, and the truth or falsity of which could be ascertained by examining the records the witness referred to. It is therefore difficult for me to see how they could support a charge of perjury under our statute, Sec. 76-45-1, U.C.A.1953, which defines perjury: one who sworn on oath to tell the truth, " * * * *wilfully* and *knowingly testifies* * * * *falsely* * * [to] *any matter to be true which he knows to be false.*" (emphasis added)

On the basis of what I have said about the two propositions discussed, which to my mind demonstrates a fatal weakness in the foundation upon which the case against the accused, C. W. Brady, must necessarily rest, I concur in sustaining the trial court's ruling suppressing the evidence in question, which ruling I think we should forthrightly acknowledge is tantamount to dismissing the action.

CALLISTER, J., concurs in the opinion of CROCKETT, C. J.

HENRIOD, Justice (concurring in the result).

I concur in the result, and in the reasoning of Mr. Justice Ellett, except that I think those cases cited anent extraordinary writs do not apply *in this particular case.*

In this case the District Attorney's whole contention at the trial and on this appeal was that the proffered evidence which was suppressed was all that the State ever could produce. Granting the motion to suppress was as final in disposing of this case as was possible. The authorities cited in the main opinion had to do with interlocutory matters in cases which were still pending,—not finished as is the case here—and hence inapropos here.

I think this case can be decided without the necessity of going into the matter of what the functions of the extraordinary writs are, or any discussion of Miranda or any other case.

Also, I think the concurring opinion of Mr. Justice Crockett is pedantic and quite unnecessary, based on the frayed raimant of the word "forthright."

This case was in substance decided in State v. Brady,[1] on identical issues. Why not cite that case, affirm it and quit cogitating on something else?

1. 18 Utah 2d 434, 425 P.2d 155 (1967).